**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
         ndeckant@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DRICKEY JACKSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | Case No. **'20 CV 2365 BEN BGS**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Drickey Jackson ("Plaintiff"), individually and on behalf of himself and all others similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action suit brought against Defendant Amazon.com, Inc. ("Amazon" or "Defendant") for wiretapping the electronic communications of Amazon Flex Drivers' ("Flex Drivers") closed Facebook groups. The wiretaps are used by Defendant to secretly observe and monitor Flex Drivers' electronic communications and confidential postings in their closed Facebook groups, through the use of monitoring tools, automated software, and dedicated employees with backgrounds in signals intelligence and communications intelligence. As such, Defendant has violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 and 635, have intruded upon the seclusion of Plaintiff, and violated class members' privacy rights under the California Constitution.

2. Mr. Jackson is an Amazon Flex Driver. He communicated with other Flex Drivers in closed Facebook groups that were monitored by Defendant. Amazon monitored these closed groups secretly and gathered information about planned strikes or protests, unionizing efforts, pay, benefits, deliveries, warehouse conditions, driving conditions, and whether workers had been approached by researchers examining Amazon's workforce. Amazon conducted this monitoring by hiring employees and investigators with backgrounds in intelligence, particularly signals intelligence ("SIGINT") and communications intelligence ("COMINT"), who deployed automated tools and monitoring software as part of their SIGINT and COMINT duties on behalf of Amazon.

3. Plaintiff brings this action on behalf of himself and a class of all persons whose electronic communications through the closed Facebook groups were monitored by Defendant's wiretaps.

## THE PARTIES

4. Plaintiff Drickey Jackson is a resident of San Diego, California with an intent to remain there, and is therefore a domiciliary of California. Throughout 2020, prior to the filing of this lawsuit, Mr. Jackson communicated with Flex Drivers through closed Facebook groups while they were being monitored by Amazon. Mr. Jackson was in San Diego when he used the closed Facebook groups subject to Amazon's monitoring. During his use of the Facebook groups, Mr. Jackson's electronic communications, including communications about planned strikes or protests, pay, benefits, deliveries, driving and warehouse conditions, unionizing efforts, and whether workers had been approached by researchers examining Amazon's workforce, were intercepted in real time and were disclosed through Amazon's wiretap. Mr. Jackson was unaware at the time that his electronic communications, including the information described above, were being intercepted in real-time and would be disclosed to Amazon, nor did Mr. Jackson consent to the same.

5. Defendant Amazon is a Delaware Corporation with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109.

6. Amazon engages in the retail sale of consumer products and subscriptions and makes the majority of its sales through its online platform, Amazon.com.

7. Amazon does business throughout California and the entire United States.

8. In addition to its own drivers, Amazon contracts out to over 800 service delivery partners. These contract drivers are referred to as Flex Drivers.

9. Amazon discourages its employees, delivery partners, and contract drivers from unionizing.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is a citizen of a state different from Defendant.

11. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the laws and benefits of doing business in this State, and Plaintiff's claims arise out of each of Defendant's forum-related activities. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

12. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## STATEMENT OF FACTS

**Overview Of The Wiretaps**

13. Amazon Flex is a program by which Amazon pays regular people to deliver packages.

14. Amazon Flex drivers have complained about a myriad of issues surrounding their employment, including a lack of job security, little to no benefits, and low pay.

15. In order to discuss these issues with colleagues, many Flex Drivers, including Plaintiff, formed or joined private Facebook groups.

16. The idea of these Facebook groups is that they are only populated with Flex Drivers, not other persons, and certainly not employees or personnel of Defendant.

17.  Unbeknownst to Flex Drivers, however, Defendant has been secretly monitoring and wiretapping these closed Facebook groups.

18.  An Amazon document, called "social media monitoring," lists forty-three closed Facebook groups and pages run by Flex Drivers in different cities in the United States that Amazon monitors.  The document reads that "[t]he following social forums mentioned in the table are to be monitored during the Social media process."

19.  Defendant confirmed that this document came from a sophisticated and secret program that surveils dozens of private Facebook groups set up by workers. Defendant later confirmed that this program is part of its Orwellian-sounding Advocacy Operations Social Listening Team ("Advocacy Operations").  Amazon recruits members of the Advocacy Operations from individuals who have backgrounds and experience in SIGINT and COMINT.  The purpose of this program is to monitor information about planned strikes or protests, unionizing efforts, warehouse conditions, pay, benefits, and whether workers have been approached by researchers examining Amazon's workforce.

20.  Posts are monitored or intercepted in real time.  Advocacy Operations describes how it captures relevant information from closed Facebook groups (included but not limited to the groups listed below) using automated monitoring tools:

**AO / Social Media Monitoring / Source Access DOC**
The following social forums mentioned in the table are to be monitored during the Social media process.

| GROUPS | COUNTRY/PLATFORM |
|---|---|
| Amazon Flex Drivers (USA) | |
| Amazon Workers & Independent Amazon Flex Drivers Experience Group USA | |
| Amazon Flex Drivers | |
| Amazon Flex APEX Drivers Nationwide | |
| Amazon Flex Las Vegas | |
| Amazon Flex Drivers of Richmond, VA | |
| Amazon Flex Drivers Los Angeles | |
| Official Amazon Flex Drivers of Portland | |

| STEP | WHAT TO DO |
|---|---|
| 1. Capture the posts mentioned in the Shift handover mail. | Open the shift handover mail and list down the posts which requires additional monitoring/investigation/reporting. |
| 2. Allot the existing groups, pages t | Find the list of Login wise groups in the Source access doc |
| 3. Search for updates in the following Public forums & blogs using the steps mentioned in Social Media Login doc. | a. If assigned multiple logins, open each in different browser and the corresponding groups of the account in different tabs<br>b. Change the filter at the top of each group to "New post"<br>c. Collect posts of corresponding shift |
| 4. Categorization of posts | a. Compare the collected posts with Post categorization template<br>b. Read out the example mentioned across corresponding category and sub-category<br>c. Determine the right category and sub-category<br>d. If relevant information not found consult with the Cam/Sid |
| 5. Investigation of the posts | a. Open the Investigation doc<br>b. Reach out to the relevant category and find out the use case of the post<br>c. Determine the relevant details required for the investigation |
| 6. Finding out details using different tools | a. Open the Tools doc<br>b. Follow the mentioned steps to find out relevant information required<br>C. Collate the information |
| 7. Reporting of the post | Use the Reporting template doc to report out the post in the DL |
| 8. Updates for next shift associates | Use the Shift handover doc to pass on any relevant issues to be followed up by the associates in the next shift |

21.     Issues raised by the Drivers in these closed Facebook groups are compiled into reports and delivered to Amazon's Corporate Department. The reports are then filtered and categorized through a tool called the "Social Media Bank." Reports detailing driving and warehouse conditions, strikes, pay, deliveries, benefits, unionizing, being approached by researchers examining Amazons workforce, and/or protests are flagged by Advocacy Operations.[1]

22.     The below screenshot is an example of a post by Amazon Flex drivers complaining about not receiving delivery slots that was intercepted by Amazon:

---

[1] *Id.*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                       5

> **ISSUE:** DPs were complaining of not receiving blocks. Many were of the view that the block count has reduced since the holiday and the volume is being taken away by white vans. They are confirming it by asking the station staff. Few have also opined that the decrease in the offers have been noticed not at all stations. Some are definitely being impacted while the rest are just working fine.
>
> **TOTAL POSTS: 03, COMMENTS: 52**

23.     Amazon asked its employees to keep this monitoring program secret and created a special login page to access the reports.  In fact, on the login page for Social Media Bank, Defendant admits that "most of the Post/Comment screenshots within the site are from closed Facebook groups.  It will have a detrimental effect if it falls within the reach of any of our Delivery partners. **DO NOT SHARE** without proper authentication"[2]:



---

[2] *Id.*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                      6

24. These processes, as currently employed by Amazon, function as a wiretap.

**Defendant Wiretapped Plaintiff's Electronic Communications**

25. Since 2016, Plaintiff has been a member of closed Facebook groups for Amazon Flex drivers.

26. Plaintiff communicated to other Flex Drivers in the closed Facebook groups.

27. Plaintiff communicated about such topics as Amazon missing payments, driving routes, checking into the warehouse five minutes before shifts started, no breaks during driving shifts, delivers, and having to drive after shifts ended to finish delivering packages, which resulted in subsequent labor disputes with Amazon.

28. Plaintiff's posts were tracked and intercepted by Defendant in real time using the aforementioned processes.

29. Amazon intercepted these posts without Plaintiff's consent. The Facebook groups were closed, and Plaintiff believed he was only communicating with other Flex Drivers.

## CLASS ACTION ALLEGATIONS

30. Plaintiff seeks to represent a class of all California Flex Drivers who were members of the closed Facebook groups, and whose electronic communications were intercepted by Defendant (the "Class"). Plaintiff reserves the right to modify the class definition as appropriate based on further investigation and discovery obtained in the case.

31. Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

32. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to, whether Defendant has violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 635, has intruded upon the seclusion of Plaintiff, and violated class members' privacy rights under the California Constitution.

33. The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other class members, was a member of one of the closed Facebook Groups and had his electronic communications intercepted and disclosed to Defendant through the use of Amazon's wiretaps.

34. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

35. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

36. Plaintiff brings all claims in this action individually and on behalf of members of the Class against Defendant.

## COUNT I
### Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 631

37. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

38. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

39. To establish liability under section 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*

> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

40. Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

41. Amazon's processes, including its live tool and Social Media Bank, are a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

42. At all relevant times, by using the live tool and Social Media Bank, Defendant intentionally tapped, electrically or otherwise, the lines of internet communication between Plaintiff and class members.

43. At all relevant times, by using the live tool and Social Media Bank, Defendant intentionally tapped willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and putative Class Members, while the electronic communications were in transit or passing over any wire, line, or cable, or were being sent from or received at any place within California.

44. Defendant implemented the live tool and Social Media Bank to accomplish the wrongful conduct at issue here.

45. Plaintiff and Class Members did not consent to any of Defendant's actions in implementing the wiretaps in the closed Facebook groups. Nor have Plaintiff or Class Members consented to Defendant's intentional access, interception, reading, learning, recording, and collection of Plaintiff and Class Members' electronic communications.

46. The violation of section 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

47. Unless enjoined, Defendant will continue to commit the illegal acts alleged here. Plaintiff continues to be at risk because he frequently uses the closed Facebook groups to communicate to Flex Drivers. Plaintiff continues to desire to use the Facebook groups for that purpose, but cannot without being unwillingly monitored by Defendant. Plaintiff may or is likely to visit the closed Facebook groups in the future. As such, he has no practical way to know if his communications will be monitored or recorded by Defendant.

48. Plaintiff and Class Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

**COUNT II**
**Violation Of The California Invasion Of Privacy Act,**
**Cal. Penal Code § 635**

49. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

50. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

51. California Penal Code § 635 provides, in pertinent part:

> Every person who manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another, or any device which is primarily

or exclusively designed or intended for the unauthorized interception or reception of communications between cellular radio telephones or between a cellular radio telephone and a landline telephone in violation of Section 632.5, or communications between cordless telephones or between a cordless telephone and a landline telephone in violation of Section 632.6, shall be punished by a fine not exceeding two thousand five hundred dollars.

52. At all relevant times, by using the live tool and Social Media Bank, Defendant intentionally manufactured, assembled, sold, offered for sale, advertised for sale, possessed, transported, imported, and/or furnished a wiretap device that is primarily or exclusively designed or intended for eavesdropping upon the communication of another.

53. The live tool and Social Media Bank are "devices" that are "primarily or exclusively designed" for eavesdropping. That is, the live tool and social media bank are designed to gather private postings on Facebook and other electronic communications.

54. Plaintiff and Class Members did not consent to any of Defendant's actions in implementing wiretaps.

55. Unless enjoined, Defendant will continue to commit the illegal acts alleged here. Plaintiff continues to be at risk because he frequently uses the closed Facebook groups to communicate to Flex Drivers. Plaintiff continues to desire to use the Facebook groups for that purpose, but cannot without being unwillingly monitored by Defendant. Plaintiff may or is likely to visit the closed Facebook groups in the future. As such, he has no practical way to know if his communications will be monitored or recorded by Defendant.

56. Plaintiff and Class Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

## COUNT III
### Intrusion Upon Seclusion

57. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

58. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

59. At all relevant times, by implementing the wiretaps on the Facebook groups, Defendant intentionally intruded upon the seclusion of Plaintiff and Class Members.

60. Defendant's deception was deliberate.

61. When visiting the private Facebook groups, Plaintiff and Class Members had an objectively reasonable expectation of privacy.

62. Plaintiff and Class Members did not consent to any of Defendant's actions in implementing the wiretaps on the Facebook groups.

63. Defendant's intentional intrusion on Plaintiff's and Class Members' solitude or seclusion without consent would be highly offensive to a reasonable person.

## COUNT IV
### Invasion Of Privacy Under California's Constitution

64. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

65. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

66. Plaintiff and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their confidential posts on Facebook; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and join Facebook groups and communicate with other members without being subjected to wiretaps without Plaintiff's and Class Members' knowledge or consent.

67. At all relevant times, by implementing wiretaps in the closed Facebook groups, Defendant intentionally invaded Plaintiff's and Class Members' privacy rights under the California Constitution.

68. Plaintiff and Class Members had a reasonable expectation that their communications, personally-identifiable information, and other data would remain confidential and that Defendant would not install wiretaps on the closed Facebook groups.

69. Plaintiff and Class Members did not consent to any of Defendant's actions in implementing the wiretaps in the closed Facebook groups.

70. This invasion of privacy is serious in nature, scope and impact.

71. This invasion of privacy alleged here constitutes an egregious breach of the social norms underlying the privacy right.

72. Plaintiff and Class Members seek all relief available for invasion of privacy claims under California's Constitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class under Rule 23 and naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues so triable.

Dated:  December 4, 2020                   Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   */s/ Neal J. Deckant*
           Neal J. Deckant

L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
            ndeckant@bursor.com

*Attorneys for Plaintiff*