1
2
3
4
5
6

MORGAN, LEWIS & BOCKIUS LLP
Joseph Duffy (State Bar No. 241854)
joseph.duffy@morganlewis.com
Taylor C. Day (State Bar No. (267435)
taylor.day@morganlewis.com
Brianna R. Howard (State Bar No. 314642)
brianna.howard@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel: 213-612-2500  Fax: 213-612-2501

7

Attorneys for Defendant AMAZON.COM, INC.

8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10
11

DRICKEY JACKSON,
individually and on behalf of all
others similarly situated,

Case No. 3:20-cv-02365-WQH-BGS

12

Plaintiff,

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT AMAZON.COM, INC.'S MOTION TO COMPEL ARBITRATION, DISMISS, OR, IN THE ALTERNATIVE, TO STAY**

13

vs.

14

AMAZON.COM, INC.,

15

Defendant.

Hearing Date: March 1, 2021

16

NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT

17
18

Honorable William Q. Hayes

19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF PS&AS ISO
MTN TO COMPEL ARBITRATION
3:20-CV-02365-WQH-BGS

1

# **TABLE OF CONTENTS**

2    I.    INTRODUCTION ...................................................................................... 1

3    II.   FACTUAL BACKGROUND ..................................................................... 2

4          A.   Plaintiff's Participation In The Amazon Flex Program ........................ 2

5          B.   Amazon Flex Independent Contractor Terms Of Service ................... 3

6          C.   Plaintiff's Allegations. ............................................................................ 5

7    III.  ARGUMENT ............................................................................................. 6

8          A.   The Court Should Compel Plaintiff's Claims To Arbitration And Stay
                Or Dismiss This Action. ......................................................................... 6

9               1.   The Parties Agreed To Arbitrate These Claims. ....................... 6

10              2.   The FAA Requires Enforcing The Arbitration Agreement. ......... 8

11              3.   State Law Requires Enforcing The Arbitration Agreement. ...... 10

12                   a.   Delaware Law Requires Enforcement. ........................... 12

13                   b.   Alternatively, California Law Requires Enforcement. .... 13

14              4.   The Court Should Stay Or Dismiss This Action. ...................... 15

15         B.   At A Minimum, The Court Should Stay This Action Pending The
                Resolution Of The *Rittmann* Supreme Court Proceedings. ................. 16

16   IV.   CONCLUSION ......................................................................................... 17

18

19

20

21

22

23

24

25

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Los Angeles

i

MEMORANDUM OF PS&AS ISO
MTN TO COMPEL ARBITRATION
3:20-CV-02365-WQH-BGS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abram v. C.R. England, Inc.*,
  No. 20-cv-764, 2020 WL 5077373 (C.D. Cal. June 23, 2020) ........................... 11

*Atwood v. Rent-A-Ctr. E., Inc.*,
  No. 15-cv-1023, 2016 WL 2766656 (S.D. Ill., May 13, 2016) .......................... 11

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ................................................................. 8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ................................................................. 6

*Clinton v. Jones*,
  520 U.S. 681 (1997) ............................................................................ 16

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) .............................................................................. 8

*Delgado v. Ally Fin., Inc.*,
  No. 17-cv-2189, 2018 WL 2128661 (S.D. Cal. May 8, 2018) .......................... 16

*Diaz v. Mich. Logistics Inc.*,
  167 F. Supp. 3d (E.D.N.Y. 2016) ........................................................... 11

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995) .............................................................................. 6

*Gardensensor, Inc. v. Stanley Black & Decker, Inc.*,
  No. 12-cv-3922, 2012 WL 12925714 (N.D. Cal. Oct. 25, 2012) ...................... 12

*Johnmohammadi v. Bloomingdale's, Inc.*,
  755 F.3d 1072 (9th Cir. 2014) ................................................................ 15

*Kauffman v. U-Haul Int'l, Inc.*,
  No. 16-cv-4580, 2018 WL 4094959 (E.D. Pa. Aug. 28, 2018) ......................... 11

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ............................................................................. 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

MEMORANDUM OF PS&AS ISO
MTN TO COMPEL ARBITRATION
3:20-CV-02365-WQH-BGS

*Levya v. Certified Grocers of Cal., Ltd.,*
    593 F.2d 857 (9th Cir. 1979) ............................................................. 16

*Lockyer v. Mirant Corp.,*
    398 F.3d 1098 (9th Cir. 2005) ........................................................... 16

*Maldonado v. Sys. Servs. of Am., Inc.,*
    No. 09-cv-542, 2009 WL 10675793 (C.D. Cal. June 18, 2009) ............ 10, 11, 12

*Mason-Dixon Lines, Inc. v. Local Union No. 560,*
    443 F.2d 807 (3d Cir. 1971) ............................................................. 15

*McGrath v. DoorDash, Inc.,*
    No. 19-cv-5279, 2020 WL 6526129 (N.D. Cal. Nov. 5, 2020) ........................ 9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
    473 U.S. 614 (1985) ......................................................................... 6

*New Prime Inc. v. Oliveira,*
    139 S. Ct. 532 (2019) ....................................................................... 9

*Palcko v. Airborne Express, Inc.,*
    372 F.3d 588 (3d Cir. 2004) ........................................................ 10, 11, 12

*Poublon v. C.H. Robinson Co.,*
    846 F.3d 1251 (9th Cir. 2017) ........................................................... 15

*Rittmann v. Amazon.com, Inc.,*
    971 F.3d 904 (9th Cir. 2020) ..................................................... *passim*

*Rittmann v. Amazon.com, Inc.,*
    No. 20-622 (U.S. Nov. 4, 2020) ........................................................... 2

*Salberg v. Massage Green Int'l Franchise Corp.,*
    No. 15-cv-2805, 2016 WL 3667154 (S.D. Cal. July 11, 2016) ..................... 16

*Waithaka v. Amazon.com, Inc.,*
    No. 19-cv-1320, 2020 WL 7028945 (W.D. Wash. Nov. 30, 2020) ............. 16, 17

*Wallace v. Grubhub Holdings, Inc.,*
    970 F.3d 798 (7th Cir. 2020) ............................................................. 10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

MEMORANDUM OF PS&AS ISO
MTN TO COMPEL ARBITRATION
3:20-CV-02365-WQH-BGS

**California Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.,*
    24 Cal. 4th 83 (2000) ................................................................... 14, 15

*Engalla v. Permanente Med. Grp., Inc.,*
    15 Cal. 4th 951 (1997) ...................................................................... 14

*Guiliano v. Inland Empire Personnel, Inc.,*
    149 Cal. App. 4th 1276 (2007) ............................................................ 9

*Rosenthal v. Great W. Fin. Sec. Corp.,*
    14 Cal. 4th 394 (1996) ...................................................................... 14

*Ruiz v. Sysco Food Services,*
    122 Cal. App. 4th 520 (2004) ............................................................ 14

**Delaware Cases**

*Carder v. Carl M. Freeman Cmtys., LLC,*
    Civ. No. 3319-VCP, 2009 WL 106510 (Del. Ch. Jan. 5, 2009) ............ 8

*Graham v. State Farm Mut. Auto. Ins. Co.,*
    565 A.2d 908 (Del. 1989) .............................................................. 12, 13

*Osborn ex rel. Osborn v. Kemp,*
    991 A.2d 1153 (Del. 2010) ................................................................. 7

*SBC Interactive, Inc. v. Corp. Media Partners,*
    714 A.2d 758 (Del. 1999) ................................................................. 13

**Federal Statutes**

9 U.S.C. § 1 ........................................................................................... 1

9 U.S.C. § 2 ....................................................................................... 8, 9

**California Statutes**

CAL. CIV. PROC. CODE § 1281 ............................................................... 14

CAL. CODE CIV. PROC. § 1280 ............................................................... 14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

MEMORANDUM OF PS&AS ISO
MTN TO COMPEL ARBITRATION
3:20-CV-02365-WQH-BGS

1

**Other Authorities**

2

DEL. CODE tit. 10, § 5703 ............................................................................................. 13

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

v

## I.    INTRODUCTION

Defendant Amazon.com, Inc. moves to compel the claims of Plaintiff Drickey Jackson to arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, or applicable state law.  Plaintiff agreed to arbitrate his individual and putative class claims in this action on an individual basis through the Amazon Flex Terms of Service ("TOS").  Under governing law, courts must enforce such provisions as written.  The Court should do so here and stay or dismiss this action.

The TOS version that applies in this case provides that the contracting parties will arbitrate any disputes and claims relating to the agreement, Amazon Flex drivers' participation in the Amazon Flex program, and those drivers' performance of Amazon Flex services.  It also provides that this agreement to arbitrate is governed by the FAA, but if the FAA is held inapplicable for any reason, the agreement to arbitrate is enforceable under the law of Delaware (Amazon's state of incorporation).  Like the FAA, Delaware law strongly supports enforcement of agreements to arbitrate, and it requires enforcing the agreement here.

Plaintiff may attempt to avoid his promise to arbitrate by invoking the Ninth Circuit's decision in *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020).  But such an argument would fail.  In *Rittmann*, the court held that an earlier iteration of the Amazon Flex TOS was unenforceable on the theory that Amazon Flex drivers are transportation workers engaged in interstate commerce within the meaning of the exemption in section 1 of the FAA, *see* 9 U.S.C. § 1, and the theory that the contracting parties did not want their arbitration agreement enforced under Washington law even if the FAA exemption applied.  Amazon believes that *Rittmann*'s holding is incorrect and inconsistent with the decisions of other circuits.  It has filed a petition for certiorari asking the Supreme Court to review the issue and resolve the circuit split.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

1

MEMORANDUM OF PS&AS ISO
MTN TO COMPEL ARBITRATION
3:20-CV-02365-WQH-BGS

But the critical point for present purposes is that *Rittmann* has no bearing on whether Delaware law requires arbitration here under the newer Amazon Flex TOS. The earlier version at issue in *Rittmann* did not direct courts to compel arbitration under Delaware law if the FAA exemption applied.  Nor, for that matter, is Amazon attempting to enforce the arbitration agreement under Washington law.  The Court has no reason not to enforce the parties' unambiguous agreement, including their agreement to arbitrate and their agreement to enforce that agreement using state law if need be, much as courts have done in similar cases across the country.  And even if one improperly ignored the parties' express choice of law, Plaintiff would nonetheless be obligated to arbitrate his claims under California law.  Nothing in *Rittmann* suggests otherwise.

The Court should hold Plaintiff to his agreement to arbitrate and stay or dismiss Plaintiff's claims.  Alternatively, the Court should stay Plaintiff's action at least until the Supreme Court resolves Amazon's petition for certiorari in *Rittmann v. Amazon.com, Inc.*, No. 20-622 (U.S. Nov. 4, 2020), which should occur by the end of February 2021, and if the Supreme Court grants certiorari, until the Supreme Court issues its judgment.

## II. FACTUAL BACKGROUND

### A.      Plaintiff's Participation In The Amazon Flex Program.

This action arises out of Plaintiff's participation in the Amazon Flex program as a local delivery driver.  *See* Compl. ¶¶ 2, 4.  Amazon offers various products for purchase, and third-party providers deliver many of these products to the customers who purchase them.  Some of these delivery providers are individual independent contractors like Plaintiff who sign up through a smartphone application-based program called Amazon Flex to make local deliveries using their personal vehicles. See Declaration of Prashanth Paramanandan ("Paramanandan Decl.") ¶¶ 3–5.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

MEMORANDUM OF PS&AS ISO
MTN TO COMPEL ARBITRATION
3:20-CV-02365-WQH-BGS

### B.     Amazon Flex Independent Contractor Terms Of Service.

To become eligible to make Amazon Flex deliveries, an individual must download the Amazon Flex smartphone application and create an account. *Id.* ¶ 5. The individual must also affirmatively agree to the TOS. *Id.* ¶¶ 5, 8.  Prospective Amazon Flex drivers are free to spend as much time as they wish reviewing the TOS before accepting them. *Id.* ¶ 7.

There have been two versions of the TOS during the relevant time period. The first (the "2016 TOS") was in effect between September 21, 2016 and October 3, 2019. *Id.* ¶ 6 & Ex. A.  The second (the "2019 TOS") has been in effect since October 3, 2019. *Id.* ¶ 6 & Ex. B.  Both versions include an agreement to arbitrate disputes. *See id.*, Ex. A (2016 TOS), § 11; *id.*, Ex. B (2019 TOS), § 11.

The 2019 version governs here.  On or around December 6, 2016, Plaintiff agreed to the 2016 TOS. *Id.* ¶ 11.  He first clicked a button signifying his assent to the 2016 TOS as a whole.  There was then a separate screen prominently labeled "arbitration clause" with bold and all caps letters setting forth the arbitration agreement. *Id.* ¶ 9.  Plaintiff reviewed the arbitration clause screen and clicked on "I agree and accept," signifying his assent to the agreement's arbitration provision. *Id.* ¶¶ 9, 11.  Although Plaintiff had the opportunity to opt out of that arbitration agreement, he did not do so. *Id.* ¶¶ 10–11.  Section 13 of the 2016 TOS governed modifications to the agreement.  It stated:

> Amazon may modify this Agreement, including the Program Policies, at any time by providing notice to you through the Amazon Flex app or otherwise providing notice to you.  You are responsible for reviewing this Agreement regularly to stay informed of any modifications.  If you continue to perform the Services or access Licensed Materials (including accessing the Amazon Flex app) after the effective date of any modification to this Agreement, you agree to be bound by such modifications.  However, . . . any modifications to Section 11 will not apply to claims that accrued or to disputes that arose prior to such modification.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

MEMORANDUM OF PS&AS ISO
MTN TO COMPEL ARBITRATION
3:20-CV-02365-WQH-BGS

*Id.*, Ex. A (2016 TOS), § 13.  Plaintiff received notice that Amazon was introducing the new 2019 TOS on October 3, 2019.  *Id.* ¶¶ 13–14.  He then continued to perform deliveries on multiple occasions after that, including into 2020.  *Id.* ¶ 14.

Like its 2016 predecessor, the 2019 version of the TOS contains provisions expressing a mutual agreement to arbitrate disputes.  Specifically, the first page of the 2019 TOS states:

> **YOU AND AMAZON AGREE TO RESOLVE DISPUTES BETWEEN YOU AND AMAZON ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION. YOU AND AMAZON WAIVE THE RIGHT TO PURSUE THE RESOLUTION OF ANY SUCH DISPUTE IN A COURT AND WAIVE THE RIGHT TO A TRIAL BY JURY.**

*Id.*, Ex. B (2019 TOS), at 20 (emphasis and capitalization in original).  And section 11 states:

> THE PARTIES WILL RESOLVE BY FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT OR TRIAL BY JURY, ANY DISPUTE OR CLAIM, WHETHER BASED ON CONTRACT, COMMON LAW, OR STATUTE, ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT, INCLUDING TERMINATION OF THIS AGREEMENT, TO YOUR PARTICIPATION IN THE PROGRAM, OR TO YOUR PERFORMANCE OF SERVICES.  TO THE EXTENT PERMITTED BY LAW, THE PRECEDING SENTENCE APPLIES TO ANY DISPUTE OR CLAIM THAT OTHERWISE COULD BE ASSERTED BEFORE A GOVERNMENT ADMINISTRATIVE AGENCY.

*Id.*, Ex. B (2019 TOS), § 11.

The 2019 TOS has a choice-of-law provision that differs from that in the 2016 version.  Unlike its predecessor, the 2019 TOS states that Delaware law generally governs the agreement's interpretation and also governs enforcement of the arbitration provisions if the FAA is inapplicable for any reason:

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

> The interpretation of this Agreement is governed by the law of the state of Delaware without regard to its conflict of laws principles, except for Section 11 of this Agreement, which is governed by the Federal Arbitration Act and applicable federal law.  If, for any reason, the Federal Arbitration Act is held by a court of competent jurisdiction not to apply to Section 11 of this Agreement, the law of the state of Delaware will govern Section 11 of this Agreement, including without limitation the common law of contracts of such state if any statute could be interpreted to limit the right of Amazon or you to arbitrate pursuant to Section 11 of this Agreement.

*Id.*, Ex. B (2019 TOS), § 12; *cf. id.*, Ex. A (2016 TOS), § 12 (generally applying Washington state law "except for Section 11," without discussing what law applies if a court holds the FAA inapplicable to Section 11).

### C.    Plaintiff's Allegations.

Plaintiff claims that he created posts on Facebook about his experience as an Amazon Flex driver and shared them with groups created for this purpose.  Compl. ¶¶ 1–2, 14–16.  These Facebook groups are designed to allow Facebook users to communicate with others who share the same interests.  *See* concurrently filed Request for Judicial Notice ("RJN"), Ex. A (Facebook Help Center webpage).  Individual users can create and administer groups and, in the process, determine whether the group will be "public" or "private."  *See id.*, Ex. B (Facebook Help Center webpage).  As a general rule, anyone can view content in a public group, while only group members can view content in a private group.  *Id.*  For a private group, the group administrator has the ability to approve or decline member requests according to whatever standards (or lack thereof) they choose to follow.  *See id.*, Ex. C (Facebook Help Center webpage).

Plaintiff alleges that he communicated with other Amazon Flex drivers about the Amazon Flex program in closed Facebook groups.  Compl. ¶¶ 2, 4, 14–16, 25–26.  He alleges that Amazon employees or agents were admitted to these groups by

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

MEMORANDUM OF PS&AS ISO
MTN TO COMPEL ARBITRATION
3:20-CV-02365-WQH-BGS

the group administrators and were then able to view his posts. *Id.* ¶¶ 17–19.  In addition, Plaintiff alleges that posts Amazon Flex drivers make in these forums "are compiled into reports" for Amazon about the matters that are of concern to Amazon Flex drivers. *Id.* ¶¶ 19–23.

Plaintiff contends these alleged acts amount to a wiretap under California law. *Id.* ¶¶ 24–29.  He asserts claims on his own behalf and on behalf of a class of California Amazon Flex drivers who were "members of the closed Facebook groups, and whose electronic communications were intercepted by Defendant." *Id.* ¶ 30.  Those claims include:  two claims alleging wiretapping under the California Invasion of Privacy Act, a claim alleging intrusion upon seclusion, and a claim alleging invasion of privacy under the California constitution. *Id.* ¶¶ 37–72.  These claims are all "disputes" and "claims" under the arbitration provisions Plaintiff agreed to with Amazon.

## III.      ARGUMENT

### A.    The Court Should Compel Plaintiff's Claims To Arbitration And Stay Or Dismiss This Action.

#### 1.      The Parties Agreed To Arbitrate These Claims.

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also, e.g.*, *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). In making this determination within the FAA's framework, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under ordinary state-law principles, the parties agreed to arbitrate these claims. *See, e.g.*, *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010) (explaining that under Delaware law, "a valid contract exists when (1) the parties

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

6

MEMORANDUM OF PS&AS ISO
MTN TO COMPEL ARBITRATION
3:20-CV-02365-WQH-BGS

intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration"). In signing up to perform Amazon Flex deliveries, Plaintiff agreed to the 2016 TOS. Paramanandan Decl. ¶¶ 5, 11. In so doing, he agreed to accept updates to the TOS if he continued to perform deliveries after the updated TOS took effect. *Id.*, Ex. A (2016 TOS), § 13. Plaintiff received notice that Amazon was introducing the new 2019 TOS on October 3, 2019, and continued to perform deliveries afterward. *Id.* ¶ 14. Plaintiff admits he performs Amazon Flex deliveries, Compl. ¶ 2, and none of his allegations call the validity of his agreement into question.

Nor is there any serious dispute that the claims in this suit fall within the scope of the arbitration provision. Under the 2019 TOS (much as with the 2016 TOS to which Plaintiff had assented), Plaintiff agreed to arbitrate on an individual basis "**any** dispute or claim, whether based on contract, common law, or statute, arising out of or relating in any way to this agreement, including termination of this agreement, to your participation in the program, or to your performance of services." Paramanandan Decl., Ex. B (2019 TOS), § 11 (emphasis added and capitalization omitted). That language applies here. The heart of this lawsuit is the allegation that Amazon monitored closed Facebook groups in which Plaintiff and other Amazon Flex drivers discussed their experiences with the Amazon Flex program. *See* Compl. ¶ 2. These claims easily "relat[e] to" Plaintiff's "participation in the [Amazon Flex] program" or "performance of services."

Moreover, if there were any dispute about the scope of the arbitration agreement, it would have to be settled by the arbitrator rather than the Court. Through the 2019 TOS, Plaintiff agreed to arbitrate any disputes over arbitrability (other than disputes over the validity and enforceability of the arbitration agreement) through the agreement's incorporation of the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). *See* Paramanandan Decl.,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

MEMORANDUM OF PS&AS ISO
MTN TO COMPEL ARBITRATION
3:20-CV-02365-WQH-BGS

1    Ex. B (2019 TOS), § 11(k) (agreeing that arbitration would be conducted under the
2    AAA Commercial Arbitration Rules); *id.* § 11(l) (agreeing, as relevant here, that
3    courts would resolve disputes about the validity and enforceability of the 2019 TOS
4    as a whole and whether it is exempt from the FAA, but that the "arbitrator must
5    resolve all other disputes, including the arbitrability of claims"); *Brennan v. Opus*
6    *Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (explaining that adopting the AAA
7    arbitration rules constitutes an agreement to arbitrate arbitrability); *Carder v. Carl*
8    *M. Freeman Cmtys., LLC*, Civ. No. 3319-VCP, 2009 WL 106510, at *3–6 (Del. Ch.
9    Jan. 5, 2009) (plaintiff's argument that arbitration agreement did not cover his
10   claims was an issue for the arbitrator because the agreement adopted AAA
11   arbitration rules).

12          For these reasons, there is a valid and applicable agreement to arbitrate.  And
13   as the next two sections explain, that agreement is enforceable under federal and
14   state law.

15                  **2.     The FAA Requires Enforcing The Arbitration Agreement.**

16          Under the FAA, an arbitration agreement in "a contract evidencing a
17   transaction involving commerce . . . shall be valid, irrevocable, and enforceable,
18   save upon such grounds as exist at law or in equity for the revocation of any
19   contract." 9 U.S.C. § 2.  When the FAA applies to an arbitration agreement, courts
20   must compel arbitration according to the agreement's terms and stay (or dismiss)
21   the litigation. *Id.* §§ 3, 4; *see Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213,
22   218 (1985) ("By its terms, the Act . . . mandates that district courts shall direct the
23   parties to proceed to arbitration on issues as to which an arbitration agreement has
24   been signed.").

25          There is no question that both versions of the Amazon Flex TOS fall within
26   the general coverage of the FAA as established by section 2.  Amazon's operations
27   involve interstate commerce, and the TOS are "a contract evidencing a transaction

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

MEMORANDUM OF PS&AS ISO
MTN TO COMPEL ARBITRATION
3:20-CV-02365-WQH-BGS

involving commerce." *See, e.g.*, *Guiliano v. Inland Empire Personnel, Inc.*, 149 Cal. App. 4th 1276, 1287 (2007) (FAA's interstate commerce requirement was met "[g]iven [defendant's] undisputed interstate business activities"). In addition, the parties agreed in section 12 of both TOS versions that the FAA would govern the arbitration provisions in section 11. Paramanandan Decl., Ex. B (2019 TOS), §§ 11–12; Ex. A (2016 TOS), §§ 11–12. That agreement puts to rest any possible doubt about whether the agreement satisfies the requirements in section 2 of the FAA. *See, e.g.*, *McGrath v. DoorDash, Inc.*, No. 19-cv-5279, 2020 WL 6526129, at *5 (N.D. Cal. Nov. 5, 2020) (collecting cases holding that section 2's jurisdictional requirement is satisfied if the parties choose application of the FAA).

In *Rittmann*, however, the Ninth Circuit held that regardless of the general coverage provision of section 2, Amazon Flex drivers fell within the exemption of section 1. That provision excludes from the FAA's coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; *see Rittmann*, 971 F.3d at 921 ("We hold that the AmFlex delivery providers in this case are transportation workers engaged in interstate commerce and are thus exempt from the FAA's enforcement provisions pursuant to § 1.").

Amazon maintains *Rittmann* was incorrectly decided and has filed a petition for certiorari asking the Supreme Court to review the Ninth Circuit's ruling. As the petition explains, the scope of the section 1 exemption turns on the "ordinary" meaning of the statutory language "at the time Congress enacted the statute." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019) (citation omitted). When the FAA was enacted, the ordinary meaning of the phrase "class of workers engaged in foreign or interstate commerce" did not extend to workers employed in local, intrastate transportation activities. The word "engaged" indicates an emphasis on what the class of workers is hired to do. *Rittmann*, 971 F.3d at 925–26 (Bress, J.,

MEMORANDUM OF PS&AS ISO
MTN TO COMPEL ARBITRATION
3:20-CV-02365-WQH-BGS

dissenting).  And "interstate commerce," as it relates to transportation work, refers to transporting goods or persons between different states.  *Id.*  Putting the relevant "definitions together most reasonably indicates" the exemption "applies to workers '[o]ccupied' or 'employed' in the 'transportation of . . . property . . . between points in one state and points in another state.'"  *Id.* (citation omitted).

Plaintiff must therefore "demonstrate that the interstate movement of goods is a central part of the job description of the class of workers to which [he] belong[s]."  *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 803 (7th Cir. 2020) (Barrett, J.).  And he cannot.  Plaintiff does not and cannot allege he was part of a class of workers that is engaged to deliver goods across state lines.

Amazon has sought Supreme Court review to resolve the circuit split and hold that under a proper interpretation of the FAA, the section 1 exemption does not apply to the Amazon Flex TOS.  Amazon therefore preserves its argument that the FAA requires compelling Plaintiff to arbitration should the Supreme Court reverse the Ninth Circuit's decision in *Rittmann*.

### 3.    State Law Requires Enforcing The Arbitration Agreement.

Even if Plaintiff's arbitration agreement falls outside the FAA because of the section 1 exemption and *Rittmann*, state law still requires its enforcement.  *See, e.g.*, *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 596 (3d Cir. 2004) (enforcing an arbitration agreement under Washington state law despite the court's application of the section 1 exemption because there was "no reason to release the parties from their own agreement" and because "the effect of Section 1 is merely to leave the arbitrability of disputes in the excluded categories as if the [FAA] had never been enacted" (citation omitted)); *Maldonado v. Sys. Servs. of Am., Inc.*, No. 09-cv-542, 2009 WL 10675793, at *2 (C.D. Cal. June 18, 2009) (compelling arbitration under the California Arbitration Act even though the FAA exemption applied).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

MEMORANDUM OF PS&AS ISO
MTN TO COMPEL ARBITRATION
3:20-CV-02365-WQH-BGS

Nothing in *Rittmann* supports a different conclusion.  Rather, the majority there concluded that the 2016 TOS, as written, did not manifest an agreement to arbitrate under Washington state law if the FAA exemption applies.  *Rittmann*, 971 F.3d at 919–21.  But the *Rittmann* court did not question the broad judicial consensus that courts should generally enforce arbitration agreements under applicable state law even when the agreements are exempt from the FAA.  *See, e.g.*, *Palcko*, 372 F.3d at 596; *Maldonado*, 2009 WL 10675793, at *2; *Kauffman v. U-Haul Int'l, Inc.*, No. 16-cv-4580, 2018 WL 4094959, at *5 (E.D. Pa. Aug. 28, 2018) (assuming application of the exemption but compelling arbitration under Pennsylvania law); *Diaz v. Mich. Logistics Inc.*, 167 F. Supp. 3d, 375, 381 (E.D.N.Y. 2016) (assuming application of the exemption but compelling arbitration under New York law while assuming that the FAA section 1 exemption applied); *Atwood v. Rent-A-Ctr. E., Inc.*, No. 15-cv-1023, 2016 WL 2766656, at *3 (S.D. Ill., May 13, 2016) (compelling arbitration under the Illinois Uniform Arbitration Act even though the FAA exemption applied).

In this case, the governing TOS is the 2019 TOS, not the 2016 TOS, and Amazon is not seeking enforcement under Washington state law.  Moreover, the 2019 TOS expressly states that if the FAA were inapplicable, Delaware law would govern Section 11 relating to arbitration.  Delaware law requires enforcement of the agreement to arbitrate.  *See Abram v. C.R. England, Inc.*, 20-cv-764, 2020 WL 5077373, at *7 (C.D. Cal. June 23, 2020) (reaffirming decision to compel arbitration under Utah law, despite district court ruling in *Rittmann*, because the contracting parties expressly chose Utah arbitration law as a fallback to the FAA). Even if it did not, California law would apply and require enforcement as well.  *See Maldonado*, 2009 WL 10675793, at *2 ("California law related to arbitrations may be enforced where the FAA does not apply.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

11

MEMORANDUM OF PS&AS ISO
MTN TO COMPEL ARBITRATION
3:20-CV-02365-WQH-BGS

## a.    Delaware Law Requires Enforcement.

Unlike the 2016 TOS at issue in *Rittmann*, the 2019 TOS contains a choice-of-law provision designating Delaware law as the governing law with respect to all matters not otherwise governed by the FAA.  Paramanandan Decl., Ex. B (2019 TOS), § 12.  In addition, the choice-of-law provision states "[i]f, for any reason, the [FAA] is held by a court of competent jurisdiction not to apply to Section 11 of this Agreement, the law of the state of Delaware will govern Section 11."  *Id.*  The 2016 TOS, on the other hand, selected application of Washington law "except for Section 11," which was "governed by the [FAA] and applicable federal law," without specifically addressing the possibility of a court finding the arbitration agreement exempt from the FAA.  *Rittmann*, 971 F.3d at 920.  The *Rittmann* majority interpreted the 2016 choice-of-law provision as indicating that the parties did not want to Washington law to apply to the arbitration provision even if the FAA were held inapplicable.  While Amazon disagrees with that interpretation, the question is academic in this case given the different language of the 2019 TOS.  The parties to the 2019 TOS, like the contracting parties in *Palcko*, expressly "provided for [the] contingency" of a court holding the FAA inapplicable.  *Palcko*, 372 F.3d at 596.  So the Court should direct arbitration under the parties' fallback choice of law much as the Third Circuit did in *Palcko*.[1]

The Delaware Supreme Court has long emphasized that "the public policy of [Delaware] favors the resolution of disputes through arbitration."  *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 911 (Del. 1989) (internal citation omitted).  Reflecting that policy, Delaware "enacted a Uniform Arbitration Act"

---

[1] California conflicts-of-law principles govern here because this is a diversity action filed in California federal court.  *E.g.*, *Gardensensor, Inc. v. Stanley Black & Decker, Inc.*, No. 12-cv-3922, 2012 WL 12925714, at *3 (N.D. Cal. Oct. 25, 2012).  Under those principles, courts "respect choice-of-law provisions" if the chosen state "has a substantial relationship to the parties."  *Id.* at *4.  That condition is met because one of the parties is "incorporated in the state of Delaware."  *Id.*

that is "similar to the [FAA]." *Id.* (citing DEL. CODE tit. 10, §§ 5701–5725).  The

Delaware Uniform Arbitration Act similarly "provides that 'a written agreement to

submit to arbitration any controversy existing at or arising after the effective date of

the agreement is valid, enforceable and irrevocable, save upon such grounds as

exist at law or in equity for the revocation of any contract.'" *Id.* (quoting DEL.

CODE tit. 10, § 5701).  And "[a]ny doubt as to arbitrability is to be resolved in favor

of arbitration." *SBC Interactive, Inc. v. Corp. Media Partners*, 714 A.2d 758, 761

(Del. 1999).  Where, as here, "there is no substantial question whether a valid

agreement to arbitrate in [Delaware] was made or complied with the Court shall

order the parties to proceed with arbitration." DEL. CODE tit. 10, § 5703.

Unlike the FAA, however, the Delaware Uniform Arbitration Act contains no

exemption for any sort of transportation workers.  On the contrary, it states broadly

that the Act "applies to arbitration agreements between employers and employees

or between their respective representatives" (except for some collective bargaining

agreements). *Id.* § 5701.  *A fortiori*, then, the act applies to independent contractor

relationships like the relationship between Amazon and Amazon Flex drivers.

Nor does Plaintiff have any colorable argument that the arbitration provision

is unconscionable:  even when an arbitration provision is presented on a "take-it-or-

leave-it" basis, there is nothing inherently unfair about an arbitration provision.

*Graham*, 565 A.2d at 912–13.  As the Delaware Supreme Court remarked, "it

would be highly inappropriate if this Court were to find a contract unconscionable

because it adheres to the declared public policy of this State." *Id.* at 913.  There is

no basis under Delaware law not to enforce the arbitration provision.

### b.     Alternatively, California Law Requires Enforcement.

While the 2019 TOS unambiguously chooses Delaware law if the FAA does

not apply to the arbitration provision, Plaintiff may contend that California law

applies instead.  While Amazon disagrees, even if Plaintiff is right, he cannot avoid

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

MEMORANDUM OF PS&AS ISO
MTN TO COMPEL ARBITRATION
3:20-CV-02365-WQH-BGS

arbitration on such grounds.  The arbitration provision in the 2019 TOS (and, for that matter, the 2016 TOS) is fully enforceable under California law.

Like the FAA and Delaware law, California also has a strong public policy in favor of arbitration, which is embodied in the California Arbitration Act ("CAA"), CAL. CIV. PROC. CODE § 1280 *et seq.  See, e.g.*, *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 97 (2000) ("California law, like federal law, favors enforcement of valid arbitration agreements."); *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 406 (1996) ("In most important respects, the California statutory scheme on enforcement of private arbitration agreements is similar to the [FAA].").  And again like the FAA and Delaware law, California's arbitration statute provides that "[a] written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."  CAL. CIV. PROC. CODE § 1281.  California recognizes "a presumption in favor of arbitrability" as well.  *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 971 (1997); *see also Ruiz v. Sysco Food Services*, 122 Cal. App. 4th 520, 538 (2004).

The CAA also resembles the Delaware Uniform Arbitration Act in expressly providing that pre-dispute arbitration agreements between employers and employees are enforceable.  CAL. CODE CIV. PROC. § 1280(a) (stating that agreements to arbitrate include "agreements between employers and employees or between their respective representatives").  While, again, Amazon Flex drivers are independent contractors, not employees, the fact that the CAA "contains no exemption for employment contracts" underscores its policy in favor of enforcing arbitration agreements for workforce arrangements like Amazon Flex.  *Armendariz*, 24 Cal. 4th at 98.

Plaintiff cannot overcome that policy through any sort of unconscionability argument.  Under California law, a party opposing arbitration on such grounds

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

MEMORANDUM OF PS&AS ISO
MTN TO COMPEL ARBITRATION
3:20-CV-02365-WQH-BGS

bears the burden of proof and "must demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (internal citation omitted); *see also Armendariz*, 24 Cal. 4th at 114.[2]  Plaintiff cannot show that either form of unconscionability exists here, let alone that forms exist and justify refusing to enforce the arbitration agreement.  As in Delaware, it is not enough to argue that an agreement was presented "on a take-it-or-leave-it basis." *Poublon*, 846 F.3d at 1261.

### 4.    The Court Should Stay Or Dismiss This Action.

Because Plaintiff agreed to a valid and enforceable arbitration provision that applies to the claims in this action, the litigation cannot continue.  Where a district court finds "that all of the claims raised in the action are subject to arbitration," it should "stay the action or dismiss it outright." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014) (internal citation omitted).

Courts have power to enter such a stay both from section 3 of the FAA, *see* 9 U.S.C. § 3, and their "inherent power" to stay proceedings pending arbitration. *Mason-Dixon Lines, Inc. v. Local Union No. 560*, 443 F.2d 807, 809 (3d Cir. 1971) (holding that district court possessed inherent authority to enter a stay even though contract fell within the FAA's section 1 exemption).  Courts have power to dismiss in these circumstances from Rule 12(b)(6).  *See, e.g.*, *Delgado v. Ally Fin., Inc.*, No. 17-cv-2189, 2018 WL 2128661, at *6 (S.D. Cal. May 8, 2018); *Salberg v. Massage Green Int'l Franchise Corp.*, No. 15-cv-2805, 2016 WL 3667154, at *2 (S.D. Cal. July 11, 2016).

---

[2] Amazon contends that *Armendariz* is inapplicable here because it is limited to arbitration agreements entered into in the context of employer-employee relationships.  *See Armendariz*, 24 Cal. 4th at 90.  Again, Plaintiff's relationship with Amazon was that of an independent contractor, not an employee, as both versions of the TOS attest.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

MEMORANDUM OF PS&AS ISO
MTN TO COMPEL ARBITRATION
3:20-CV-02365-WQH-BGS

Accordingly, the Court should grant Amazon's motion to compel and either stay this action or dismiss under Rule 12(b)(6).

**B.    At A Minimum, The Court Should Stay This Action Pending The Resolution Of The *Rittmann* Supreme Court Proceedings.**

If the Court does not compel arbitration outright, it should at a minimum stay this action based on the pending petition for a writ of certiorari in *Rittmann*. If the Supreme Court grants the petition and holds that the FAA fully applies to the Amazon Flex TOS, that will be dispositive of this motion. Given that possibility, another court in the Ninth Circuit recently stayed another action involving Amazon Flex drivers, and the same result is appropriate here. *Waithaka v. Amazon.com, Inc.*, No. 19-cv-1320, 2020 WL 7028945 (W.D. Wash. Nov. 30, 2020).

This Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). "A trial court may . . . find it efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254.

As the *Waithaka* district court concluded in materially identical circumstances, the relevant factors support granting a stay: there is a sufficient probability that the Supreme Court will grant the writ of certiorari, a significant possibility of reversal, and a likelihood of irreparable harm if Amazon is denied its right to arbitrate rather than litigate. 2020 WL 7028945, at *4–7. In fact, the balance of the equities tilts even more strongly in favor of a stay here because the Supreme Court is likely to

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

16

MEMORANDUM OF PS&AS ISO
MTN TO COMPEL ARBITRATION
3:20-CV-02365-WQH-BGS

decide whether to grant the petition within a month or so. *See id.* at *7 (noting that the Supreme Court is scheduled to rule on the petition in February 2021). The requested stay will not impose an improper delay on Plaintiff's ability to pursue relief in this recently filed case.

### IV.    CONCLUSION

For all these reasons, Amazon respectfully requests that the Court compel Plaintiff's claims to arbitration and stay or dismiss this action. In the alternative, Amazon requests that action be stayed pending the resolution of the *Rittmann* Supreme Court proceedings.

Dated:  January 28, 2021                    MORGAN, LEWIS & BOCKIUS LLP


                                            By  /s/ Joseph Duffy
                                                Joseph Duffy
                                                Attorneys for Defendant
                                                Amazon.com, Inc.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

17                MEMORANDUM OF PS&AS ISO
                  MTN TO COMPEL ARBITRATION
                  3:20-CV-02365-WQH-BGS