1    **BURSOR & FISHER, P.A.**
     L. Timothy Fisher (State Bar No. 191626)
2    Neal J. Deckant (State Bar No. 322946)
     1990 North California Boulevard, Suite 940
3    Walnut Creek, CA  94596
     Telephone: (925) 300-4455
4    Facsimile:  (925) 407-2700
     E-Mail: ltfisher@bursor.com
5            ndeckant@bursor.com
6
7    *Attorneys for Plaintiff*

8
                    **UNITED STATES DISTRICT COURT**
9
                  **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   DRICKEY JACKSON, individually and        Case No. 3:20-cv-02365-WQH-BGS
     on behalf of all others similarly situated,
12
                                               **FIRST AMENDED CLASS ACTION
13                 Plaintiff,                   COMPLAINT**
14
          v.
15                                             **JURY TRIAL DEMANDED**
16   AMAZON.COM, INC.,

17                 Defendant.

18

19

20

21

22

23

24

25

26

27

28

1    Plaintiff Drickey Jackson ("Plaintiff"), individually and on behalf of himself

2  and all others similarly situated, by and through his attorneys, makes the following

3  allegations pursuant to the investigation of his counsel and based upon information

4  and belief, except as to allegations specifically pertaining to himself and his counsel,

5  which are based on personal knowledge.

6                              **NATURE OF THE ACTION**

7         1.    This is a class action suit brought against Defendant Amazon.com, Inc.

8  ("Amazon" or "Defendant") for wiretapping the electronic communications of

9  Amazon Flex Drivers' ("Flex Drivers") closed Facebook groups.  The wiretaps are

10  used by Defendant to secretly observe and monitor Flex Drivers' electronic

11  communications and confidential postings in their closed Facebook groups, through

12  the use of monitoring tools, automated software, and dedicated employees with

13  backgrounds in signals intelligence and communications intelligence.  As such,

14  Defendant has violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal

15  Code § 631 and 635, intruded upon the seclusion of Plaintiff and Class members,

16  violated Plaintiff and Class members' privacy rights under the California

17  Constitution, violated the Federal Wiretap Act, 18 U.S.C. 2510, *et seq*., and violated

18  the Stored Communications Act, 18 U.S.C. 2701, *et seq*.

19         2.    Mr. Jackson is an Amazon Flex Driver.  He communicated with other

20  Flex Drivers in closed Facebook groups that were monitored by Defendant.  Amazon

21  monitored these closed groups secretly and gathered information about planned

22  strikes or protests, unionizing efforts, pay, benefits, deliveries, warehouse conditions,

23  driving conditions, and whether workers had been approached by researchers

24  examining Amazon's workforce.  Amazon conducted this monitoring by hiring

25  employees and investigators with backgrounds in intelligence, particularly signals

26  intelligence ("SIGINT") and communications intelligence ("COMINT"), who

27  deployed automated tools and monitoring software as part of their SIGINT and

28  COMINT duties on behalf of Amazon.

1      3.      Plaintiff brings this action on behalf of himself and a class of all persons

2   whose electronic communications through the closed Facebook groups were

3   monitored by Defendant's wiretaps.

4                                    **THE PARTIES**

5      4.      Plaintiff Drickey Jackson is a resident of San Diego, California with an

6   intent to remain there, and is therefore a domiciliary of California.  Throughout 2020,

7   prior to the filing of this lawsuit, Mr. Jackson communicated with Flex Drivers

8   through closed Facebook groups while they were being monitored by Amazon.  Mr.

9   Jackson was in San Diego when he used the closed Facebook groups subject to

10  Amazon's monitoring.  During his use of the Facebook groups, Mr. Jackson's

11  electronic communications, including communications about planned strikes or

12  protests, pay, benefits, deliveries, driving and warehouse conditions, unionizing

13  efforts, and whether workers had been approached by researchers examining

14  Amazon's workforce, were intercepted in real time and were disclosed through

15  Amazon's wiretap.  Mr. Jackson was unaware at the time that his electronic

16  communications, including the information described above, were being intercepted

17  in real-time and would be disclosed to Amazon, nor did Mr. Jackson consent to the

18  same.

19     5.      Defendant Amazon is a Delaware Corporation with its principal place of

20  business at 410 Terry Avenue North, Seattle, Washington 98109.

21     6.      Amazon engages in the retail sale of consumer products and

22  subscriptions and make the majority of their sales through its online platform,

23  Amazon.com.

24     7.      Amazon does business throughout California and the entire United

25  States.

26     8.      In addition to its own drivers, Amazon contracts out to over 800 service

27  delivery partners.  These contract drivers are referred to as Flex Drivers.

28     9.      Amazon discourages their employees from unionizing.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is a citizen of a state different from Defendant.

11.     This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the laws and benefits of doing business in this State, and Plaintiff's claims arise out of each of Defendant's forum-related activities. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

12.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## STATEMENT OF FACTS

### Overview Of The Wiretaps

13.     Amazon Flex is a program by which Amazon pays regular people to deliver packages.

14.     Amazon Flex drivers have complained about a myriad of issues surrounding their employment, including a lack of job security, little to no benefits, and low pay.

15.     In order to discuss these issues with colleagues, many Flex Drivers, including Plaintiff, formed or joined private Facebook groups.

16.     The idea of these Facebook groups is that they are only populated with Flex Drivers, not other persons, and certainly not employees or personnel of Defendant.

17.     Unbeknownst to Flex Drivers, however, Defendant has been secretly monitoring and wiretapping these closed Facebook groups.

CASE NO. 3:20-CV-02365-WQH-BGS

18.     An Amazon document called "social media monitoring" lists forty-three closed Facebook groups and pages run by Flex Drivers in different cities in the United States that Amazon monitors.  The document states that "[t]he following social forums mentioned in the table are to be monitored during the Social media process."

19.     Defendant confirmed that this document came from a sophisticated and secret program that surveils dozens of private Facebook groups set up by workers. Defendant later confirmed that this program is part of its Orwellian-sounding Advocacy Operations Social Listening Team ("Advocacy Operations").  Amazon recruits members of the Advocacy Operations from individuals who have backgrounds and experience in SIGINT and COMINT.  The purpose of this program is to monitor information about planned strikes or protests, unionizing efforts, warehouse conditions, pay, benefits, and whether workers have been approached by researchers examining Amazon's workforce.

20.     Posts are monitored and/or intercepted in real time.  Advocacy Operations describes how it captures relevant information from closed Facebook groups (included but not limited to the groups listed below) using automated monitoring tools:

**AO / Social Media Monitoring / Source Access DOC**
The following social forums mentioned in the table are to be monitored during the Social media process.

| GROUPS | COUNTRY/PLATFORM |
|---|---|
| Amazon Flex Drivers (USA) | |
| Amazon Workers & Independent Amazon Flex Drivers Experience Group USA | |
| Amazon Flex Drivers | |
| Amazon Flex APEX Drivers Nationwide | |
| Amazon Flex Las Vegas | |
| Amazon Flex Drivers of Richmond, VA | |
| Amazon Flex Drivers Los Angeles | |
| Official Amazon Flex Drivers of Portland | |

4

| STEP | WHAT TO DO |
|---|---|
| 1. Capture the posts mentioned in the Shift handover mail. | Open the shift handover mail and list down the posts which requires additional monitoring/investigation/reporting. |
| 2. Allot the existing groups, pages t | Find the list of Login wise groups in the **Source access** doc |
| 3. Search for updates in the following Public forums & blogs using the steps mentioned in **Social Media Login** doc. | a. If assigned multiple logins, open each in different browser and the corresponding groups of the account in different tabs<br>b. Change the filter at the top of each group to "New post"<br>c. Collect posts of corresponding shift |
| 4. Categorization of posts | a. Compare the collected posts with **Post categorization template**<br>b. Read out the example mentioned across corresponding category and sub-category<br>c. Determine the right category and sub-category<br>d. If relevant information not found consult with the Cam/Sid |
| 5. Investigation of the posts | a. Open the **Investigation doc**<br>b. Reach out to the relevant category and find out the use case of the post<br>c. Determine the relevant details required for the investigation |
| 6. Finding out details using different tools | a. Open the **Tools doc**<br>b. Follow the mentioned steps to find out relevant information required<br>C. Collate the information |
| 7. Reporting of the post | Use the **Reporting template** doc to report out the post in the DL |
| 8. Updates for next shift associates | Use the **Shift** handover doc to pass on any relevant issues to be followed up by the associates in the next shift |

21.     Issues raised by the Drivers in these closed Facebook groups are compiled into reports and delivered to Amazon's Corporate Department.  The reports are then filtered and categorized through a tool called the "Social Media Bank." Reports detailing driving and warehouse conditions, strikes, pay, deliveries, benefits, unionizing, being approached by researchers examining Amazon's workforce, and/or protests are flagged by Advocacy Operations.[1]

---

[1] Lauren K. Gurley & Joseph Cox, *Inside Amazon's Secret Program to Spy on Workers' Private Facebook Groups*, VICE, Sept. 1, 2020, https://www.vice.com/en/article/3azegw/amazon-is-spying-on-its-workers-in-closed-facebook-groups-internal-reports-show.

CASE NO. 3:20-CV-02365-WQH-BGS

1
2

22.     The below screenshot is an example of a post by Amazon Flex drivers complaining about not receiving delivery slots that was intercepted by Amazon:

3
4
5
6
7

**ISSUE**: DPs were complaining of not receiving blocks. Many were of the view that the block count has reduced since the holiday and the volume is being taken away by white vans. They are confirming it by asking the station staff. Few have also opined that the decrease in the offers have been noticed not at all stations. Some are definitely being impacted while the rest are just working fine.

**TOTAL POSTS: 03, COMMENTS: 52**

8
9
10
11
12
13

23.     Amazon asked its employees to keep this monitoring program secret and created a special login page to access the reports.  In fact, on the login page for Social Media Bank, Defendant admits that "most of the Post/Comment screenshots within the site are from closed Facebook groups.  It will have a detrimental effect if it falls within the reach of any of our Delivery partners. **DO NOT SHARE** without proper authentication":

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



6

CASE NO. 3:20-CV-02365-WQH-BGS

24.    These processes, as currently employed by Amazon, function as a wiretap.

**Defendant Wiretapped Plaintiff's Electronic Communications**

25.    Since 2016, Plaintiff has been a member of closed Facebook groups for Amazon Flex drivers.

26.    Plaintiff communicated to other Flex Drivers in the closed Facebook groups.

27.    Plaintiff communicated about such topics as Amazon missing payments, driving routes, checking into the warehouse five minutes before shifts started, no breaks during driving shifts, delivers, and having to drive after shifts ended to finish delivering packages, which resulted in subsequent labor disputes with Amazon.

28.    Plaintiff's posts were tracked and intercepted by Defendant in real time using the aforementioned processes.

29.    Amazon intercepted these posts without Plaintiff's consent.  The Facebook groups were closed, and Plaintiff believed he was only communicating with other Flex Drivers.

## CLASS ACTION ALLEGATIONS

30.    Plaintiff seeks to represent a class of all Flex Drivers in the United States who were members the closed Facebook groups, and whose electronic communications were intercepted by Defendant (the "Class").  Plaintiff reserves the right to modify the class definition as appropriate based on further investigation and discovery obtained in the case.

31.    Plaintiff also seeks to represent a subclass of all Class members in the State of California who were members the closed Facebook groups, and whose electronic communications were intercepted by Defendant (the "California Subclass").  Plaintiff reserves the right to modify the subclass definition as appropriate based on further investigation and discovery obtained in the case.

32.    The Class and California Subclass shall collectively be referred to as the

CASE NO. 3:20-CV-02365-WQH-BGS

1  "Classes."

2       33.    Members of the Classes are so numerous that their individual joinder

3  herein is impracticable.  On information and belief, members of the Classes number

4  in the thousands.  The precise number of members of the Classes and their identities

5  are unknown to Plaintiff at this time but may be determined through discovery.

6  Members of the Classes may be notified of the pendency of this action by mail and/or

7  publication through the distribution records of Defendant.

8       34.    Common questions of law and fact exist as to all members of the Classes

9  and predominate over questions affecting only individual members of the Classes.

10  Common legal and factual questions include, but are not limited to, whether

11  Defendant has violated the California Invasion of Privacy Act ("CIPA"), Cal. Penal

12  Code §§ 631 and 635, intruded upon the seclusion of Plaintiff, violated class

13  members' privacy rights under the California Constitution, violated the Federal

14  Wiretap Act, and violated the Stored Communication Act.

15       35.    The claims of the named Plaintiff are typical of the claims of the Classes

16  because the named Plaintiff, like all other class members, was a member of one of the

17  closed Facebook Groups and had his electronic communications intercepted and

18  disclosed to Defendant through the use of

19  Amazon's wiretaps.

20       36.    Plaintiff is an adequate representative of the Classes because his interests

21  do not conflict with the interests of the members of the Classes he seeks to represent,

22  he has retained competent counsel experienced in prosecuting class actions, and he

23  intends to prosecute this action vigorously.  The interests of members of the Classes

24  will be fairly and adequately protected by Plaintiff and his counsel.

25       37.    The class mechanism is superior to other available means for the fair and

26  efficient adjudication of the claims of members of the Classes.  Each individual

27  member of the Classes may lack the resources to undergo the burden and expense of

28  individual prosecution of the complex and extensive litigation necessary to establish

Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 631

38.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

39.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

40.     To establish liability under section 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

> *Or*

> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

CASE NO. 3:20-CV-02365-WQH-BGS

1

*Or*

2

Uses, or attempts to use, in any manner, or for any purpose,
or to communicate in any way, any information so
obtained,

3

4

*Or*

5

6

Aids, agrees with, employs, or conspires with any person or
persons to unlawfully do, or permit, or cause to be done any
of the acts or things mentioned above in this section.

7

8

41.    Section 631(a) is not limited to phone lines, but also applies to "new

9

technologies" such as computers, the Internet, and email.  *See Matera v. Google Inc.*,

10

2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new

11

technologies" and must be construed broadly to effectuate its remedial purpose of

12

protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal.

13

Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc.*

14

*Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of

15

CIPA and common law privacy claims based on Facebook's collection of consumers'

16

Internet browsing history).

17

42.    Amazon's processes, including its automatic monitoring tools and

18

software, and Social Media Bank, are a "machine, instrument, contrivance, or …

19

other manner" used to engage in the prohibited conduct at issue here.

20

43.    At all relevant times, by using the automatic monitoring tools and

21

software and Social Media Bank, intentionally tapped, electrically or otherwise, the

22

lines of internet communication between Plaintiff and California Subclass members.

23

44.    At all relevant times, by using the automatic monitoring tools and

24

software and Social Media Bank, Defendant willfully and without the consent of all

25

parties to the communication, or in any unauthorized manner, read or attempted to

26

read or learn the contents or meaning of electronic communications of Plaintiff and

27

putative California Subclass members, while the electronic communications were in

28

transit or passing over any wire, line, or cable, or were being sent from or received at any place within California.

45.     Defendant implemented the automatic monitoring tools and software and Social Media Bank to accomplish the wrongful conduct at issue here.

46.     Plaintiff and California Subclass members did not consent to any of Defendant's actions in implementing the wiretaps in the closed Facebook groups. Nor have Plaintiff or California Subclass members consented to Defendant's intentional access, interception, reading, learning, recording, and collection of Plaintiff and California Subclass members' electronic communications.

47.     The violation of section 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

48.     Unless enjoined, Defendant will continue to commit the illegal acts alleged here.  Plaintiff continues to be at risk because he frequently uses the closed Facebook groups to communicate to Flex Drivers.  Plaintiff continues to desire to use the Facebook for that purpose, but cannot without being unwillingly monitored by Defendant.  Plaintiff may or is likely to visit the closed Facebook groups in the future.  As such, he has no practical way to know if his communications will be monitored or recorded by Defendant.

49.     Plaintiff and California Subclass members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

## COUNT II
### Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 635

50.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

51.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

CASE NO. 3:20-CV-02365-WQH-BGS

52.     California Penal Code § 635 provides, in pertinent part:

> Every person who manufactures, assembles, sells, offers for sale, advertises for sale, possesses, transports, imports, or furnishes to another any device which is primarily or exclusively designed or intended for eavesdropping upon the communication of another, or any device which is primarily or exclusively designed or intended for the unauthorized interception or reception of communications between cellular radio telephones or between a cellular radio telephone and a landline telephone in violation of Section 632.5, or communications between cordless telephones or between a cordless telephone and a landline telephone in violation of Section 632.6 , shall be punished by a fine not exceeding two thousand five hundred dollars.

53.     At all relevant times, by using automatic monitoring tools and software and the Social Media Bank, Defendant intentionally manufactured, assembled, sold, offered for sale, advertised for sale, possessed, transported, imported, and/or furnished a wiretap device that is primarily or exclusively designed or intended for eavesdropping upon the communication of another.

54.     The automatic monitoring tools and software and the Social Media Bank, are "devices" that are "primarily or exclusively designed" for eavesdropping. That is, the automatic monitoring tools and software and social media bank are designed to gather private postings on Facebook and other electronic communications.

55.     Plaintiff and California Subclass members did not consent to any of Defendant's actions in implementing wiretaps.

56.     Unless enjoined, Defendant will continue to commit the illegal acts alleged here.  Plaintiff continues to be at risk because he frequently uses the closed Facebook groups to communicate to Flex Drivers.  Plaintiff continues to desire to use the Facebook for that purpose, but cannot without being unwillingly monitored by Defendant.  Plaintiff may or is likely to visit the closed Facebook groups in the

future.  As such, he has no practical way to know if his communications will be monitored or recorded by Defendant.

57.     Plaintiff and California Subclass members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

## COUNT III
### Intrusion Upon Seclusion

58.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

59.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

60.     At all relevant times, by implementing the wiretaps on the Facebook groups, Defendant intentionally intruded upon the seclusion of Plaintiff and members of the California Subclass.

61.     Defendant's deception was deliberate.

62.     When visiting the private Facebook groups, Plaintiff and members of the California Subclass had an objectively reasonable expectation of privacy.

63.     Plaintiff and members of the California Subclass did not consent to any of Defendant's actions in implementing the wiretaps on the Facebook groups.

64.     Defendant's intentional intrusion on Plaintiff's and members of the California Subclass' solitude or seclusion without consent would be highly offensive to a reasonable person.

## COUNT IV
### Invasion Of Privacy Under California's Constitution

65.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

66.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

CASE NO. 3:20-CV-02365-WQH-BGS

67.    Plaintiff and California Subclass members have an interest in: (1) precluding the dissemination and/or misuse of their confidential posts on Facebook; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and join Facebook groups and communicate with other members without being subjected to wiretaps without Plaintiff's and California Subclass members' knowledge or consent.

68.    At all relevant times, by implementing wiretaps in the closed Facebook groups, Defendant intentionally invaded Plaintiff's and California Subclass members' privacy rights under the California Constitution.

69.    Plaintiff and California Subclass members had a reasonable expectation that their communications, personally-identifiable information, and other data would remain confidential and that Defendant would not install wiretaps on the closed Facebook groups.

70.    Plaintiff and California Subclass members did not consent to any of Defendant's actions in implementing the wiretaps in the closed Facebook groups.

71.    This invasion of privacy is serious in nature, scope and impact.

72.    This invasion of privacy alleged here constitutes an egregious breach of the social norms underlying the privacy right.

73.    Plaintiff and California Subclass members seek all relief available for invasion of privacy claims under California's Constitution.

**COUNT V**
**For The Interception And Disclosure Of Wire, Oral, or Electronic Communications In Violation Of The Federal Wiretap Act, 18 U.S.C. § 2510,** *et seq.*

74.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

75.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

76.     As alleged herein, Defendant intentionally intercepted the electronic communications of Plaintiff and the proposed Classes.

77.     Each of Defendant's wiretaps, automatic monitoring tools and software described herein, is an "electronic, mechanical, or other device" as defined by 18 U.S.C. § 2510(5), and is primarily used for the purpose of the surreptitious interception of electronic communications.

78.     Upon information and belief, Defendant intercepts the electronic communications contemporaneously as they are sent.

79.     Upon information and belief, Defendant receives and stores these messages through the employment of a mechanical or electrical tool or apparatus that is considered a device under 18 U.S.C § 2510, *et seq*.

80.     Defendant's interception and internment of electronic communications sent between Plaintiff and members of the Classes is intentional, as alleged herein.

81.     Defendant's conduct violated 18 U.S.C. § 2511 and therefore gives rise to a claim under 18 U.S.C. § 2520.

82.     Pursuant to 18 U.S.C. § 2520, Plaintiff and the Classes are entitled to the greater of actual damages or statutory damages or not less than $100 a day for each day of violation or $10,000, whichever is greater.

## COUNT VI
**For The Manufacture, Distribution, Possession, And Advertising of Wire, Oral, Or Electronic Communication Interception Devices In Violation Of The Federal Wiretap Act,**
**18 U.S.C. § 2512**

83.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

84.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

85.     18 U.S.C. § 2512, in pertinent part, holds "any person" liable "who intentionally":

> manufactures, assembles, possesses, or sells any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce.

18 U.S.C. § 2512(1)(b).

86.     Each of Defendant's wiretaps, including the automatic monitoring tools and software described herein, is an "electronic, mechanical, or other device" as defined by 18 U.S.C. § 2510(5), and are primarily useful for the purpose of the surreptitious interception of electronic communications.

87.     At all relevant times, by using automatic monitoring tools and software and the Social Media Bank, Defendant intentionally manufactured, assembled, and/or possessed a device that is primarily useful for the purpose of surreptitious interception of electronic communications.

88.     Defendant knew or had reason to know that the automatic monitoring tools and software and the Social Media Bank—which were transported through interstate commerce over the internet—were primarily useful for the purpose of wiretapping electronic communications.

89.     Plaintiff and California Subclass members did not consent to any of Defendant's actions in implementing wiretaps.

90.     Defendant's conduct violated 18 U.S.C. § 2512 and therefore gives rise to a claim under 18 U.S.C. § 2520.

91.     Pursuant to 18 U.S.C. § 2520, Plaintiff and the Classes are entitled to the greater of actual damages or statutory damages or not less than $100 a day for each day of violation or $10,000, whichever is greater.

## COUNT VII
### Violation Of The Stored Communications Act,
### 18 U.S.C. §§ 2701, *et seq.*

92.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

93.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

94.     The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701, *et seq.*, prohibits "intentionally access[ing] without authorization a facility through which an electronic communication service is provided … and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage."  18 U.S.C. § 2701(a)(1)."

95.     The Social Media Bank and Defendant's automatic monitoring tools are "electronic communication service[s]" as defined in 18 U.S.C. § 2510(15).

96.     At the time Plaintiff and the Classes' electronic communications were accessed without authorization on Facebook, the data was in "electronic storage" as required by the SCA.

97.     At all relevant times, Defendant intentionally accessed the contents of Plaintiff's and members of the Classes' Facebook Groups, and thereby obtained the contents of the Facebook Groups while the contents were in storage.

98.     At all relevant times, Defendant acted without authorization.

99.     Defendant was not a party to any of these electronic communications.

100.    Plaintiff and members of the Classes are permitted to bring a civil action over these violations of the SCA.  18 U.S.C. § 2707(a).

101.    Plaintiff and members of the Class seek all relief available under the SCA, including damages suffered by Plaintiff and members of the Classes for not less than $1,000, and punitive damages.  18 U.S.C. § 2707(c).

17

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)  For an order certifying the Classes under Rule 23 and naming Plaintiff as the representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)  For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(c)  For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d)  For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

(e)  For prejudgment interest on all amounts awarded;

(f)  For an order of restitution and all other forms of equitable monetary relief;

(g)  For injunctive relief as pleaded or as the Court may deem proper; and

(h)  For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues so triable.


Dated:  February 19, 2021                    Respectfully submitted,

                                             **BURSOR & FISHER, P.A.**

                                             By:    */s/ Neal J. Deckant*
                                                    Neal J. Deckant

                                             L. Timothy Fisher (State Bar No. 191626)
                                             Neal J. Deckant (State Bar No. 322946)
                                             1990 North California Boulevard, Suite 940
                                             Walnut Creek, CA  94596
                                             Telephone: (925) 300-4455

CASE NO. 3:20-CV-02365-WQH-BGS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
ndeckant@bursor.com

*Attorneys for Plaintiff*

---

19