1
2
3
4
5
6
7
8

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:   ltfisher@bursor.com
              ndeckant@bursor.com

*Attorneys for Plaintiff*

9

10

11

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18

| | |
|---|---|
| DRICKEY JACKSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | Case No. 3:20-cv-02365-WQH-BGS<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, DISMISS, OR, IN THE ALTERNATIVE, TO STAY**<br><br>Hearing Date: May 10, 2021<br><br>Judge: Hon. William Q. Hayes |

19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ................................................................................................. 1

LEGAL STANDARD ........................................................................................... 2

ARGUMENT ......................................................................................................... 3

I.   PLAINTIFF'S CLAIMS ARE OUTSIDE THE SCOPE OF THE ARBITRATION CLAUSE ................................................. 3

    A.   The Arbitration Clause Is Limited To Claims Or Disputes That Arose In The Course Of Plaintiff's Employment, Not Plaintiff's Activities As A Private Citizen ................................................................................. 3

    B.   It Is For The Court To Determine The Arbitrability Of Plaintiff's Claims ............................................................ 7

II.   PLAINTIFF IS AN INDEPENDENT CONTRACTOR "ENGAGED IN FOREIGN OR INTERSTATE COMMERCE," AND IS THEREFORE EXEMPT FROM THE FAA'S ENFORCEMENT PROVISIONS ..................................... 9

III.   THE 2016 TOS APPLIES, UNDER WHICH THE ARBITRATION AGREEMENT IS VOID ......................................... 10

    A.   Plaintiff Was Not On Notice Of The 2019 TOS And Therefore Did Not Assent To The Updated Terms ................... 11

    B.   Under The 2016 TOS, The Arbitration Agreement Is Void For Lack Of Governing Law ............................................. 13

IV.   EVEN IF THE 2019 TOS APPLIES, PLAINTIFF IS STILL NOT REQUIRED TO ARBITRATE HIS CLAIMS ............... 14

    A.   California Law Supersedes The Choice Of Law Clause, And Plaintiff Is Not Required To Arbitrate His Claims Under California Law .............................................. 15

        1.   California Has A Greater Interest In The Litigation Than Delaware, And The Arbitration Clause Is Contrary To California's Public Policy .............................................................. 15

        2.   The Arbitration Clause Is Unenforceable Under California Law ........................................................ 17

i

B.    Even If Delaware Law Governs The Arbitration
Clause In The 2019 TOS, Plaintiff Is Not Required
To Arbitrate His Claims..............................................................24

V.    THE COURT SHOULD NEITHER STAY NOR DISMISS
THIS ACTION .......................................................................................25

CONCLUSION..............................................................................................................25

1

**TABLE OF AUTHORITIES**

**PAGE(S)**

2

**CASES**

3

4

*Ajamian v. CantorCO2e, L.P.*,
   203 Cal. App. 4th 771 (Cal. Ct. App. 2012) ........................................ 7, 8

5

6

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
   6 P.3d 669 (Cal. 2000) ............................................................... 20, 23

7

*Bergstein v. Parmar*,
   2014 WL 12586073 (C.D. Cal. June 23, 2014)...................................... 16

8

9

*Blair v. Rent-A-Center, Inc.*,
   928 F.3d 819 (9th Cir. 2019)........................................................... 18

10

11

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
   622 F.3d 996 (9th Cir. 2010)....................................................... 16, 17

12

13

*Carbajal v. CWPSC, Inc.*,
   245 Cal. App. 4th 227 (Cal. Ct. App. 2016) .............................. 19, 21, 23

14

15

*Chiquita Fresh North America, L.L.C. v. Greene Transport Co.*,
   949 F. Supp. 2d 954 (N.D. Cal. 2013) ................................................ 16

16

*Congdon v. Uber Tech., Inc.*,
   291 F. Supp. 3d 1012 (N.D. Cal. 2018) ........................................... 8, 19

17

18

*Discover Bank v. Superior Court*,
   113 P.3d 1100 (Cal. 2005) ................................................ 20, 21, 22, 23

19

20

*Douglas v. United States Dist. Court for Cent. Dist. of California*,
   495 F.3d 1062 (9th Cir. 2007)........................................................... 11

21

*Elias v. Superior Court*,
   2015 WL 1455910 (Cal. Ct. App. 2015)............................................. 5, 6

22

23

*Engen v. Grocery Delivery E-Services USA Inc.*,
   453 F. supp. 3d 1231 (D. Minn. 2020)................................................. 12

24

25

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) ......................................................................... 7

26

27

*Fritz v. Nationwide Mut. Ins. Co.*,
   1990 WL 186448 (Del. Ch. 1990)....................................................... 24

28

iii

*Garrido v. Air Liquide Industrial U.S. LP*,
    241 Cal. App. 4th 833 (Cal. Ct. App. 2015) ............................................ 19, 21, 22

*Gentry v. Superior Court*,
    165 P.3d 556 (Cal. 2007) ............................................................................... 17

*Graham v. State Farm Mutual Auto Ins. Co.*,
    565 A.2d 908 (Del. 1989)............................................................................... 24

*Gramercy Investment Trust v. Lakemont Homes Nevada, Inc.*,
    198 Cal. App. 4th 903 (Cal. Ct. App. 2011) ................................................. 15

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
    561 U.S. 287 (2010) ......................................................................................... 3

*Hose v. Washington Inventory Services, Inc.*,
    2017 WL 3085846 (S.D. Cal. July. 19, 2017)................................................. 2

In *In re Facebook Biometric Information Privacy Litig.*,
    185 F. Supp. 3d 1155 (N.D. Cal. 2016) ........................................................ 12

*International Bhd. of Teamsters v. NASA Servs., Inc.*,
    957 F.3d 1038 (9th Cir. 2020)......................................................................... 3

*Kanbar v. O'Melveny & Myers*,
    849 F. Supp. 2d 902 (N.D. Cal. 2011) ............................................................ 7

*Lockman Foundation v. Evangelical Alliance Mission*,
    930 F.2d 764 (9th Cir. 1991).......................................................................... 16

*McGill v. Citibank, N.A.*,
    393 P.3d 85 (Cal. 2017) ................................................................................. 17

*McGovern v. U.S. Bank N.A.*,
    2020 WL 4582687 (S.D. Cal. Aug. 10, 2020) ............................................... 19

*McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.*,
    --- F. Supp. 3d ---, 2020 WL 6780341 (D. Or. Nov. 18, 2020)............................ 12

*Mostowfi v. I2 Telecom Int'l, Inc.*,
    2004 WL 7338797 (N.D. Cal. May 27, 2004) ................................................. 6

*Myers v. Bennett Law Offices*,
    238 F.3d 1068 (9th Cir. 2001)........................................................................ 16

*New Prime Inc. v. Oliveira*,
    139 S. Ct. 532 (2019) ....................................................................................... 8

iv

*Norcia v. Samsung Telecommunications Am., LLC*,
  845 F.3d 1279 (9th Cir. 2017)................................................................. 3

*OTO, L.L.C. v. Kho*,
  447 P.3d 680 (Cal. 2019) ...................................................................... 20

*Oxy-Health, LLC v. H2 Enterprise, Inc.*,
  2019 WL 6729646 (C.D. Cal. July 31, 2019) ........................................ 5

*Oxy-Health, LLC v. H2 Enterprises, Inc.*,
  812 F. App'x 660 (9th Cir. 2020)........................................................ 4, 5

*Palcko v. Airborne Express, Inc.*,
  372 F.3d 588 (3d Cir. 2004) ................................................................. 14

*Parino v. BidRack, Inc.*,
  838 F. Supp. 2d 900 (N.D. Cal. 2011) ................................................... 7

*Perez Bautista v. Juul Labs, Inc.*,
  --- F. Supp. 3d ---, 2020 WL 4673915 (N.D. Cal. Aug. 12, 2020) .......... 4

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017)............................................................. 21

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*,
  388 U.S. 395 (1967) .............................................................................. 3

*Rainier Credit Co. v. Western Alliance Corp.*,
  171 Cal. App. 3d 255 (Cal. Ct. App. 1985)....................................... 8, 19

*Rice v. Downs*,
  248 Cal. App. 4th 175 (Cal. Ct. App. 2016) .......................................... 5

*Rittmann v. Amazon.com, Inc.*,
  383 F. Supp. 3d 1196 (W.D. Wash. 2019),
  *aff'd*, 971 F.3d 904 (9th Cir. 2020) ...................................................... 14

*Rittmann v. Amazon.com, Inc.*,
  971 F.3d 904 (9th Cir. 2020)............................................... 2, 9, 10, 13

*S.D. v. Hytto Ltd.*,
  2019 WL 8333519 (N.D. Cal. May 15, 2019) ...................................... 16

*Schnabel v. Trilegiant Corp.*,
  697 F.3d 110 (2d Cir. 2012) ................................................................ 11

*SEIU Local 121RN v. Los Robles Regional Medical Center*,
  976 F.3d 849 (9th Cir. 2020) ...................................................................... 7

*Starke v. SquareTrade, Inc.*,
  913 F.3d 279 (2d Cir. 2019) ...................................................................... 11

*Tompkins v. 23andMe, Inc.*,
  2014 WL 2903752 (N.D. Cal. June 25, 2014) .......................................... 8

*Waithaka v. Amazon.com, Inc.*,
  966 F.3d 10 (1st Cir. 2020) ............................................................... passim

*Webber v. Uber Tech., Inc.*,
  2018 WL 10151934 (C.D. Cal. Sept. 5, 2018) ......................................... 12

*Worldwide Ins, Group v. Klopp*,
  603 A.2d 788 (Del. 1992) ........................................................................ 24

## STATUTES

9 U.S.C. § 1 .............................................................................................. 2, 9

9 U.S.C. § 2 .................................................................................................. 9

Cal. Civ. Code § 1280(f) ............................................................................ 20

Cal. Civ. Code § 1542 .................................................................................. 6

Cal. Civ. Code § 1641 .................................................................................. 5

Cal. Civ. Code § 1648 .................................................................................. 5

Cal. Civ. Code § 1670.5(a) ........................................................................ 20

Cal. Penal Code § 630 ................................................................................ 18

Cal. Penal Code § 637.2(b) ........................................................................ 18

## OTHER AUTHORITIES

Cal. Assembly Bill No. 51 (2019) .............................................................. 17

Plaintiff Drickey Jackson ("Plaintiff") hereby submits this response in opposition to Defendant Amazon.com, Inc.'s ("Amazon" or "Defendant") Motion To Compel Arbitration, Dismiss, Or, In The Alternative, To Stay (ECF No. 7) (hereinafter, the "Motion" or "Mtn.").

## INTRODUCTION

For the past several years, Plaintiff has been a "Flex Driver" for Defendant. Flex Drivers are independent contractors paid by Amazon to deliver packages. First Amended Class Action Complaint ¶ 13 (hereinafter, the "FAC") (ECF No. 11). Since at least 2016, Plaintiff has been a member of a private Facebook group consisting of other Amazon Flex Drivers. *Id*. ¶ 25. These groups allow Amazon Flex Drivers to privately discuss a "myriad of issues," away from the prying eyes of Defendant. *Id*. ¶¶ 14-16. "Unbeknownst to Flex Drivers, however, Defendant has been secretly monitoring and wiretapping these closed Facebook groups" in a comprehensive social media monitoring program, involving "the use of monitoring tools, automated software, and dedicated employees with backgrounds in signals intelligence and communications intelligence." *Id*. ¶¶ 17-23. These actions not only constitute an egregious breach of privacy under common law and the California Constitution, but they also violate California Penal Code §§ 631 and 635, as well as the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*, and the Stored Communications Act, 18 U.S.C. § 2701, *et seq*.

Amazon now seeks to compel Plaintiff to arbitrate his claims pursuant to a provision in the 2016 Amazon Flex Terms of Service (the "2016 TOS") and 2019 Amazon Flex Terms of Service ("2019 TOS"). *See* Declaration of Prashanth Paramanandan, Exs. A-B ("Paramanandan Decl.") (ECF No. 15-3). Unfortunately for Amazon, the arbitration clauses in the Amazon Flex Terms of Service do not cover this dispute. This case concerns the monitoring of posts made by Plaintiff in his private time, in a private Facebook group, as a private citizen. Regardless of the subject matter of the posts within the private Facebook group, Plaintiff's conduct does

not "aris[e] out of or relat[e] in any way to [the] agreement," which solely concerns Plaintiff's employment relationship.  2016 TOS, at 1; 2019 TOS, at 1.

Even if this case fell within the ambit of the arbitration clause—and it does not—Defendant still cannot force Plaintiff to arbitrate his claims.  Plaintiff's status as a transportation worker "engaged in interstate commerce" exempts him from the Federal Arbitration Act's ("FAA") enforcement provisions.  9 U.S.C. § 1; *see also generally Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020); *see also Waithaka v. Amazon.com, Inc.*, 966 F.3d 10 (1st Cir. 2020).

Amazon further argues that even though Plaintiff is exempt from the FAA's arbitration provisions, Plaintiff still must arbitrate his claims under Delaware law.  Mtn. at 12:18-21.  But that argument assumes the 2019 TOS governs Plaintiff's employment.  Yet, because Amazon did not provide notice to Plaintiff of the 2019 TOS and Plaintiff never assented to the 2019 TOS, the 2016 TOS still governs his employment.  And, as the Ninth Circuit has held, once the FAA exemption is applied, "no law [] governs the arbitration provision … [and] there is no valid arbitration agreement." *Rittmann*, 917 F.3d at 921.  Regardless, even if the 2019 TOS were to apply, Plaintiff would still not be required to arbitrate his claims under either California law—which would apply under the 2019 TOS in the absence of the FAA—or Delaware law.

Finally, Amazon argues that this Court should dismiss or stay this action because Plaintiff's claims are subject to arbitration.  Because Plaintiff's claims are not subject to arbitration pursuant to the plain language of either the 2016 TOS or the 2019 TOS, this result is unwarranted.

For the reasons set forth below, Defendant's Motion should be denied in full.

## **LEGAL STANDARD**

"In deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Hose v. Washington Inventory*

*Services, Inc.*, 2017 WL 3085846, at *2 (S.D. Cal. July. 19, 2017) (Hayes, J.) (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)). "As the party seeking to compel arbitration, [Defendant] bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (internal quotations omitted).

"Arbitration is strictly a matter of consent, and thus is a way to resolve … *only those disputes* … the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (emphasis in original). As the Ninth Circuit has held, "the federal policy favoring arbitration is no substitute for party agreement, or lack thereof." *International Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1041-42 (9th Cir. 2020). "Accordingly, we must determine whether a contract *ever* existed; unless that issue is decided in favor of the party seeking arbitration, there is no basis for submitting any question to an arbitrator." *Id.* (emphasis in original, internal quotations omitted). These principles are consistent with the "equal footing" rule, which requires arbitration agreements to be "as enforceable as any other contract, *but not more so*." *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 404 n.12 (1967) (emphasis added).

## ARGUMENT

**I.   PLAINTIFF'S CLAIMS ARE OUTSIDE THE SCOPE OF THE ARBITRATION CLAUSE**

### A.   The Arbitration Clause Is Limited To Claims Or Disputes That Arose In The Course Of Plaintiff's Employment, Not Plaintiff's Activities As A Private Citizen

As an initial matter, the claims asserted in this action do not fall within the ambit of Defendant's arbitration clause. The 2016 TOS states as follows:

> THE PARTIES WILL RESOLVE BY FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT, ANY DISPUTE OR CLAIM, WHETHER BASED ON CONTRACT, COMMON LAW, OR STATUTE, *ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT*, INCLUDING TERMINATION OF THIS

1

2

AGREEMENT, TO YOUR PARTICIPATION IN THE PROGRAM, OR TO YOUR PERFORMANCE OF SERVICES.

3    2016 TOS, at § 11(a) (emphasis added).  The 2019 TOS contains identical language.

4    2019 TOS, at § 11(a).

5         Plaintiff's claims do not "aris[e] out of or relat[e] in any way to [the]

6    agreement."  This action is not about wage-and-hour disputes, such as those at issue

7    in *Rittmann* and *Waithaka*.  Nor is it about activities Plaintiff conducted while at

8    work, or any particular provision of the Terms of Service.  Rather, it is about Amazon

9    spying on Plaintiff's private posts to a private Facebook group, which Plaintiff posted

10   on his own time.  FAC ¶¶ 25-29.  And the act of wiretapping Plaintiff's private

11   communications does not arise out of or relate to the agreement, and is therefore not

12   subject to arbitration.  *Oxy-Health, LLC v. H2 Enterprises, Inc.*, 812 F. App'x 660,

13   661 (9th Cir. 2020) ("*Oxy-Health II*") (denying motion to compel arbitration of

14   trademark-based claims where "Wen agreed to arbitrate disputes 'arising out of,

15   relating to, or resulting from *[his] employment with the company*'") (emphasis in

16   original); *Perez Bautista v. Juul Labs, Inc.*, 478 F. Supp. 3d 865, 872 (N.D. Cal.

17   2020) ("When coupled with the clear directive that arbitration provisions covering

18   disputes 'arising out of this agreement' or 'arising hereunder' only cover claims

19   arising from the contract terms, even if such claims in some sense would not have

20   arisen but for the parties' agreement, the Court is satisfied that Plaintiffs' causes of

21   action are not disputes 'over the terms of [the] Agreement' that would invoke the

22   arbitration provision in the ICA.").

23        Defendant argues that because the substance of the Facebook posts dealt with

24   Plaintiff's "experiences with the Amazon Flex program," the "claims 'relat[e] to'

25   Plaintiff's 'participation in the [Amazon Flex] program' or 'performance of

26   services.'"  Mtn. at 8:17-21.  This misses the point:  the *act of wiretapping*—which is

27   the onus for Plaintiff's claims—does not "aris[e] out of or relat[e] in any way to [the]

28

4

agreement."  Regardless, reading the term "relate" in the context of the agreement shows that "relate" is only meant to cover disputes that occur within the scope of Plaintiff's employment.  As the California legislature has ordained, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."  Cal. Civ. Code § 1641. Further, "[h]owever broad may be the terms of a contract, it extends <u>only to those things concerning which it appears that the parties intended to contract</u>."  Cal. Civ. Code § 1648 (emphasis added).  In other words, "even under a very broad arbitration provision, such as 'any controversy or claim arising out of or relating to this agreement,' tort claims must have their roots in the relationship between the parties which was created by the contract before they can be deemed to fall within the scope of the arbitration provision."  *Rice v. Downs*, 248 Cal. App. 4th 175, 188 (Cal. Ct. App. 2016).

On this point, *Oxy-Health* is instructive.  In *Oxy-Health*, "[p]laintiff Oxy-Health, LLC, brought trademark infringement and related claims against its former employee Ching Wen Yeh and his business, H2 Enterprises."  *Oxy-Health II*, 812 F. App'x at 661.  The defendants attempted to compel arbitration on the basis that the dispute "related to" Mr. Wen's employment with Oxy-Health.  *Oxy-Health, LLC v. H2 Enterprise, Inc.*, 2019 WL 6729646, at *4 (C.D. Cal. July 31, 2019), *aff'd*, 812 F. App'x 660 ("*Oxy-Health I*").  The district court found that "the words 'from your employment' had a limiting effect on the scope of the Agreement":

> Defendants have failed to explain how Plaintiff's **trademark** claims, which are statutory tort claims, are sufficiently related to the formation and breach of the Agreement between the parties (*i.e.*, contract claims). Indeed, none of Plaintiff's claims relate to the interpretation or performance of the Agreement. Nor do they touch matters covered by the Agreement.

*Oxy-Health I*, 2019 WL 6729646, at *4 (emphasis in original); *see also Elias v. Superior Court*, 2015 WL 1455910, at *7 (Cal. Ct. App. 2015) (limiting "broad"

arbitration clause to the parties' employment relationship, and noting "Under SC Fuels' [] interpretation, the Arbitration Agreement would apply if it terminated Elias and she was injured 25 years later by an SC Fuels truck.  Absent supporting language or evidence, we may not read the Arbitration Agreement so broadly").

The same logic applies here.  The Terms of Service are only intended to cover Plaintiff's employment relationship with Defendant, not activities Plaintiff does in his private time.  The use of employment-related examples such as "termination of this agreement," "participation in the program," and "performance of services" evidence this intention.  Any broader interpretation would require Plaintiff to arbitrate his claims any time he mentioned "Amazon Flex Driver" in a sentence.  Thus, "relating in any way to" is circumscribed to Plaintiff's employment relationship.

Defendant's interpretation of the arbitration clause would also lead to absurd results.  First, Defendant's interpretation would mean that merely mentioning the Amazon Flex Drivers program in a casual conversation—such between friends at a bar or between spouses at home—could give rise to an arbitrable claim.  It certainly was not Plaintiff's intention in contracting with Amazon to agree to a clause that sweeps so broadly, and it is implausible to suggest it was Amazon's either.  *Mostowfi v. I2 Telecom Int'l, Inc.*, 2004 WL 7338797, at *3 (N.D. Cal. May 27, 2004) ("[T]he court should not interpret the FAA in a fashion that would frustrate the clear intentions of the parties under their particular arbitration agreement.  To do so would contravene the primary purpose of the FAA, which is to ensure that private agreements to arbitrate are enforced according to their terms.") (internal quotations omitted; emphasis in original); *Elias*, 2015 WL 1455910, at *7.  Further, Amazon's interpretation would require arbitration of claims that Plaintiff did not know he had the right to pursue.  That is, Amazon secretly monitored Plaintiff and other users of the Facebook groups (FAC ¶¶ 17-23), and Plaintiff's lack of knowledge of those claims materially affected his agreement with Amazon.  *Cf.* Cal. Civ. Code § 1542 ("A general release does not extend to claims that the creditor or releasing party does

1  not know or suspect to exist in his or her favor at the time of executing the release and

2  that, if known by him or her, would have materially affected his or her settlement

3  with the debtor or released party."); *Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 906

4  (N.D. Cal. 2011) (recognizing that material non-disclosure may amount to fraudulent

5  inducement under California law, which would void any arbitration agreement);

6  *Kanbar v. O'Melveny & Myers*, 849 F. Supp. 2d 902, 913 (N.D. Cal. 2011) ("[T]he

7  personal decision to waive the right to a judicial forum must have been **knowingly**

8  **made**.") (emphasis added).

9      In short, compelling Plaintiff to arbitrate his claims here would improperly

10 expand the arbitration clause in the 2016 TOS and 2019 TOS beyond its intended

11 scope.

12      **B.      It Is For The Court To Determine The Arbitrability Of Plaintiff's Claims**

13      Defendant also argues "any dispute about the scope of the arbitration

14 agreement … would have to be settled by the arbitrator rather than the Court."  Mtn.

15 at 8:25-26.  Not so.  "[E]xcept where the parties clearly and unmistakably provide

16 otherwise, it is the court's duty to interpret the agreement and to determine whether

17 the parties intended to arbitrate grievances concerning a particular matter."  *SEIU*

18 *Local 121RN v. Los Robles Regional Medical Center*, 976 F.3d 849, 855 (9th Cir.

19 2020).  "This is a 'heightened standard,' higher than the evidentiary standard

20 applicable to other matters of interpreting an arbitration agreement."  *Ajamian v.*

21 *CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 790 (Cal. Ct. App. 2012).  "In this manner

22 the law treats silence or ambiguity about the question *who* (primarily) should decide

23 arbitrability differently from the way it treats silence or ambiguity about the question

24 *whether* a particular merits-related dispute is arbitrable because it is within the scope

25 of a valid arbitration agreement—for in respect to this latter question the law reverses

26 the presumption."  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45

27 (1995) (emphasis in original; internal quotations omitted).  In other words, unless the

28

agreement explicitly states otherwise, there is a presumption *against* allowing an arbitrator to determine whether arbitration is appropriate under the terms of the contract.

Under the 2016 TOS, which as explained below govern here, "any disputes regarding the arbitrability of a claim … shall be decided by a court of competent jurisdiction, and not by an arbitrator."  2016 TOS § 11(j).  And even under the 2019 TOS, the Court must first decide whether the § 1 exemption to the FAA applies—and, the exemption does apply, *see infra* Argument § II —before taking any other steps. *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537 (2019) ("[A] court should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration.").  Forcing Plaintiff to arbitrate the question of arbitrability would completely undermine the fact that he is *exempt* from arbitration as a transportation worker under the FAA.  Further, reference to the AAA Commercial Arbitration Rules (*see* 2019 TOS § 11(k)) does not mean that the parties agreed to have an arbitrator decide the threshold issue of arbitrability.  *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *11 (N.D. Cal. June 25, 2014) ("[T]he Court agrees with Plaintiffs that a bare reference to the AAA rules in 23andMe's online contract does not show that the parties clearly and unmistakably intended to delegate arbitrability."); *Ajamian*, 203 Cal. App. 4th at 790 ("[N]othing in the AAA rules states that the AAA arbitrator, as opposed to the court, shall determine those threshold issues [of arbitrability], or has exclusive authority to do so, particularly if litigation has already been commenced.").  Thus, it is for the Court to determine whether this dispute falls within the scope of the arbitration clause.[1]

---

[1] In any event, any ambiguity as to the terms of the 2016 TOS or 2019 TOS must be construed against Amazon. *Rainier Credit Co. v. Western Alliance Corp.*, 171 Cal. App. 3d 255, 263 (Cal. Ct. App. 1985) (noting it is a "legal maxim that an ambiguity in a contract will be construed against the drafter of the contract.") (citing Cal. Civ. Code § 1654); *Congdon v. Uber Tech., Inc.*, 291 F. Supp. 3d 1012, 1022 (N.D. Cal. 2018) ("In the case of ambiguous terms within a form contract, such terms would be construed against the drafter.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.   PLAINTIFF IS AN INDEPENDENT CONTRACTOR "ENGAGED IN FOREIGN OR INTERSTATE COMMERCE," AND IS THEREFORE EXEMPT FROM THE FAA'S ENFORCEMENT PROVISIONS

Even if Plaintiff's claims fall within the scope of the arbitration clause—and they do not—Plaintiff is exempt from arbitration under the FAA.  The FAA states that an arbitration clause in "a contract evidencing a transaction involving commerce … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  But the FAA specifically excludes the "contracts of employment of seamen, railroad employees, <u>or any other class of workers engaged in foreign or interstate commerce</u>" from the definition of "commerce."  9 U.S.C. § 1 (emphasis added).  Accordingly, "workers engaged in foreign or interstate commerce" are exempt from the FAA's enforcement provisions. Thus, the question is whether Amazon Flex Drivers such as Plaintiff are "workers engaged in foreign or interstate commerce."

In *Rittmann*, the Ninth Circuit held that "[t]he plain meaning of the relevant statutory text, case law interpreting the exemption's scope and application, and the construction of similar statutory language all support the conclusion that transportation workers need not cross state lines to be considered 'engaged in foreign or interstate commerce' pursuant to § 1."  *Rittmann*, 971 F.3d at 910.  The Ninth Circuit first noted that the definitions of "engaged" and "commerce" at the time Congress enacted the FAA "do[] not suggest that a worker employed to deliver goods that originate out-of-state to an in-state destination is not 'engaged in commerce' any less than a worker tasked with delivering goods between states."  *Id.*  The Ninth Circuit also looked at statutes enacted around the same time as the FAA, and noted that under these statutes, "courts … have held that workers were employed in [or engaged in] interstate commerce even when they did not cross state lines."  *Id.* at 912-913 (examining FELA, the Clayton Act, and the Robinson-Patman Act).  Accordingly, the Ninth

Circuit held that Amazon Flex Drivers "belong to a class of workers engaged in interstate commerce that falls within § 1's exemption":

> There is no suggestion that the goods AmFlex workers deliver originate in the same state where deliveries take place, such that delivery providers are making purely intrastate deliveries. Rather, AmFlex workers pick up packages that have been distributed to Amazon warehouses, certainly across state lines, and transport them for the last leg of the shipment to their destination. Although Amazon contends that AmFlex delivery providers are "engaged in local, intrastate activities," the Amazon packages they carry are goods that remain in the stream of interstate commerce until they are delivered. AmFlex delivery providers are thus transportation workers engaged in the movement of interstate commerce and exempt from the FAA's application.

*Id.* at 915-16.

The Ninth Circuit is not alone in this analysis. The First Circuit has also held that Amazon Flex Drivers are "engaged in interstate commerce" within the meaning of FAA § 1:

> [W]e reject Amazon's cramped construction of Section 1's exemption for transportation workers. The original meaning of the phrase "engaged in … interstate commerce," revealed by the FELA precedents, and the text, structure, and purpose of the FAA, all point to the same conclusion: Waithaka and other last-mile delivery workers who haul goods on the final legs of interstate journeys are transportation workers "engaged in … interstate commerce," regardless of whether the workers themselves physically cross state lines.

*Waithaka*, 966 F.3d at 26. Thus, pursuant to *Rittmann*—which is now final given the Supreme Court's denial of Amazon's petition for writ of certiorari—Amazon Flex Drivers fall within the "engaged in interstate commerce" exemption to the FAA.

## III. THE 2016 TOS APPLIES, UNDER WHICH THE ARBITRATION AGREEMENT IS VOID

Defendant argues that under the 2019 TOS, Delaware law fills the void left by the inapplicability of the FAA. Mtn. at 11:5-7 ("The 2019 TOS … contains a choice-of-law provision designating Delaware law as the governing law with respect to all

matters not otherwise governed by the FAA.").  This argument assumes that the 2019 TOS governs Plaintiff's employment.  But because Amazon did not provide Plaintiff with notice of the 2019 TOS, Plaintiff did not assent to the 2019 TOS and the 2016 TOS governs Plaintiff's employment.  And because the § 1 exemption applies, the arbitration clause in the 2016 TOS is void for lack of governing law.

### A.   Plaintiff Was Not On Notice Of The 2019 TOS And Therefore Did Not Assent To The Updated Terms

"Parties to a contract have no obligation to check the terms on a periodic basis to learn whether they have been changed by the other side." *Douglas v. United States Dist. Court for Cent. Dist. of California*, 495 F.3d 1062, 1066 (9th Cir. 2007). "Indeed, a party can't unilaterally change the terms of a contract; it must obtain the other party's consent before doing so." *Id*. "This is because a revised contract is merely an offer and does not bind the parties until it is accepted." *Id*. "And generally an offeree cannot actually assent to an offer unless he knows of its existence." *Id.* (internal quotations omitted).

Here, Amazon states that it "sent the 2019 TOS to Plaintiff via email on October 3, 2019, and afterward he performed additional Flex deliveries." Paramanandan Decl. at ¶ 14.  Notably, Amazon does not state that Plaintiff ever opened the email, viewed the 2019 TOS, or otherwise assented to the 2019 TOS in any form.  And, as courts have held, "that someone has received an email does not without more establish that he or she should know that the terms disclosed in the email relate to a service in which he or she had previously enrolled and that a failure affirmatively to opt out of the service amounts to assent to those terms." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 126 (2d Cir. 2012) (applying California law); *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 292 (2d Cir. 2019) ("Several things about the transaction and the email Starke received from SquareTrade following the Amazon confirmation email lead us to conclude that Starke did not have reasonable notice of

the arbitration provision, which was contained only in the Post-Sale T&C.").[2]  Indeed, even the 2016 TOS requires Amazon to provide notice to Flex Drivers in order to update the terms.  2016 TOS § 13 ("Amazon may modify this Agreement, including the Program Policies, at any time **by providing notice to you** through the Amazon Flex app or otherwise providing notice to you.") (emphasis added).

Further, Amazon has not provided evidence that Plaintiff received the email with the updated 2019 TOS, only that the email was allegedly sent to Plaintiff.  And Amazon does not state whether the 2019 TOS was sent as a separate email or as part of an email dealing with another aspect of the Amazon Flex program.  *Engen v. Grocery Delivery E-Services USA Inc.*, 453 F. supp. 3d 1231, 1240 (D. Minn. 2020) (holding email notice of terms insufficient because "[t]he email was not sent to inform Engen of modifications to the 2016 Terms and Conditions or the content of the 2018 Terms and Conditions").  Tellingly, Amazon does not include a copy of the email ostensibly sent to Plaintiff as an exhibit to the Paramanandan Declaration.  At the very least, this creates a question of fact as to the enforceability of the updated terms.  *McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.*, --- F. Supp. 3d ---, 2020 WL 6780341, at *13 (D. Or. Nov. 18, 2020) ("[G]enuine disputes of material fact exist as to the enforceability of the updated Terms and Conditions, making summary judgment inappropriate.").

Because Amazon did not provide notice of the 2019 TOS, Plaintiff never assented to the updated terms, and the 2016 TOS governs Plaintiff's employment.

---

[2] Amazon's cases are distinguishable.  In *In re Facebook Biometric Information Privacy Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016), Facebook informed users of the updated terms of service through a "jewel notification" on each user's "individual Facebook newsfeed."  And in *Webber v. Uber Tech., Inc.*, 2018 WL 10151934, at *4 (C.D. Cal. Sept. 5, 2018), the user affirmatively consented to Uber's updated terms of service through the mobile application.

**B.     Under The 2016 TOS, The Arbitration Agreement Is Void For Lack Of Governing Law**

Because the 2016 TOS governs Plaintiff's employment, the Court should look to the "Governing Law" section of the 2016 TOS.  That clause reads as follows:

> The interpretation of this Agreement is governed by the law of the state of Washington without regard to its conflict of laws principles, except for Section 11 of this Agreement, which is governed by the Federal Arbitration Act and applicable federal law.

2016 TOS § 12.

Because the § 1 exemption applies, the FAA cannot govern the arbitration clause.  The Ninth Circuit has recognized that this leaves the arbitration clause without any governing law:

> Were we to sever the choice-of-FAA clause, the governing law provision would state that the TOS is "governed by the law of the state of Washington without regard to its conflict of laws principles, except for Section 11 of this Agreement."  In that case, the plain language of the contract would prohibit applying Washington law to the arbitration provision.
>
> …
>
> Because there is no law that governs the arbitration provision, we agree with the district court that there is no valid arbitration agreement.  We therefore reject Amazon's alternative bases to compel arbitration.

*Rittmann*, 971 F.3d at 920-921.  This analysis is bolstered by the severability clause in the 2016 TOS.  2016 TOS § 16(a) ("If any provision of this Agreement is determined to be unenforceable, the parties intend that this Agreement be enforced as if the unenforceable provisions were not present.").

Defendant argues that *Rittmann* only held the 2016 TOS "was not enforceable under Washington state law, [and] did not address whether some other body of state law could be applied."  Mtn. at 11, n.1.  This is false.  Without the FAA, "it is not clear what law to apply to the Arbitration Provision or whether the parties intended the Arbitration Provision to remain enforceable in the event that the FAA was found to be inapplicable."  *Rittmann v. Amazon.com, Inc.*, 383 F. Supp. 3d 1196, 1203

13

(W.D. Wash. 2019), *aff'd*, 971 F.3d 904 (9th Cir. 2020). Accordingly, California law cannot "fill the void" if the FAA does not apply, and the arbitration clause would be unenforceable under California law regardless. *See* Argument § IV.A.2, *infra*. Defendant also cites to *Palcko v. Airborne Express, Inc.*, 372 F.3d 588 (3d Cir. 2004), which held that Washington law applied in the absence of the FAA. Mtn. at 9:19-26. But unlike the 2016 TOS (and, admittedly, like the 2019 TOS), the arbitration clause in *Palcko* contained a savings clause in case the FAA did not apply. *Palcko*, 372 F.3d at 596 ("[T]he arbitration agreement … provided for that contingency by including the following: 'To the extent that the Federal Arbitration Act is inapplicable, Washington law pertaining to agreements to arbitrate shall apply.'"). In any event, the result in *Rittmann* is binding on this Court, which voided the arbitration clause in the 2016 TOS without the FAA to govern it.

In short, because the FAA is inapplicable to Plaintiff's claims, the arbitration clause in the 2016 TOS is void, and Plaintiff cannot be compelled to arbitrate his claims.

## IV.   EVEN IF THE 2019 TOS APPLIES, PLAINTIFF IS STILL NOT REQUIRED TO ARBITRATE HIS CLAIMS

Assuming, for argument's sake, that the 2019 TOS governs Plaintiff's employment with Amazon—and it does not—Plaintiff still cannot be compelled to arbitrate his claims. The "Governing Law" clause in the 2019 TOS differs from its 2016 counterpart. The "Governing Law" clause in the 2019 TOS states as follows:

> The interpretation of this Agreement is governed by the law of the state of Delaware without regard to its conflict of laws principles, except for Section 11 of this Agreement, which is governed by the Federal Arbitration Act and applicable federal law. If, for any reason, the Federal Arbitration Act is held by a court of competent jurisdiction not to apply to Section 11 of this Agreement, the law of the state of Delaware will govern Section 11 of this Agreement, including without limitation the common law of contracts of such state if any statute could be interpreted to limit the right of Amazon or you to arbitrate pursuant to Section 11 of this Agreement.

1  2019 TOS § 12 (emphasis added).  In other words, the Governing Law clause selects

2  Delaware law as a fallback in case the FAA is found to be inapplicable.  However,

3  this choice of law provision is invalid.  Rather, California law should apply in the

4  absence of the FAA, under which the arbitration clause is void.  And even if

5  Delaware law applies (it does not) Plaintiff is not required to arbitrate his claims.

**A.  California Law Supersedes The Choice Of Law Clause, And Plaintiff Is Not Required To Arbitrate His Claims Under California Law**

*1.  California Has A Greater Interest In The Litigation Than Delaware, And The Arbitration Clause Is Contrary To California's Public Policy*

10       To determine whether a choice of law provision is enforceable, the Court must

11  determine "either (1) whether the chosen state has a substantial relationship to the

12  parties or their transaction, or (2) whether there is any other reasonable basis for the

13  parties' choice of law."  *Gramercy Investment Trust v. Lakemont Homes Nevada,*

14  *Inc.*, 198 Cal. App. 4th 903, 909 (Cal. Ct. App. 2011).  Assuming that either of these

15  prongs are met, "the parties' choice will generally be enforced unless the other side

16  can establish both that the chosen law is contrary to a fundamental policy of

17  California and that California has a materially greater interest in the determination of

18  the particular issue."  *Id.*[3]

19       In *Waithaka*, the First Circuit confronted the similar issue of what law to apply

20  to Amazon's arbitration clause after ruling Amazon Flex drivers were exempt from

21  the FAA.  The First Circuit held that the law of Washington State was "the default

22  choice of law for assessing the enforceability of the arbitration and class waiver

23  provisions of the parties' contract" in the absence of the FAA.  *Waithaka*, 966 F.3d at

24  27.  Nonetheless, the First Circuit found that Massachusetts law "oust[ed] the

---

[3] Amazon argues the choice of law question is for an arbitrator to decide.  MTD at 13:17-18 ("[T]he 2019 TOS's delegation provision reserves any dispute over the enforceability of the choice-of-law provision for the arbitrator.").  That is wrong. Which state's law applies goes to the "validity and enforceability of the Agreement," which the 2019 TOS delegates to the Court.  2019 TOS § 11(l).

1   contractual choice of Washington law" because Massachusetts law had "a materially

2   greater interest in the enforceability of the class waiver and arbitration provisions than

3   Washington," and the clauses were contrary to Massachusetts public policy. *Id.* at 34.

4   Thus, the First Circuit applied Massachusetts law and denied Amazon's motion to

5   compel arbitration.

6          The result here is the same as to California and Delaware law. First, California

7   has a "materially greater interest" in determining the claims at issue in this lawsuit.

8   Not only is Plaintiff a California resident, he seeks to represent a subclass of

9   California Flex Drivers for violations of California-specific laws. FAC ¶¶ 1, 4, 31.

10  Further, Plaintiff was harmed by Amazon's wiretapping in California. *S.D. v. Hytto*

11  *Ltd.*, 2019 WL 8333519, at *2 (N.D. Cal. May 15, 2019) (wiretapping caused "harm"

12  in the location where plaintiff was located); *Bergstein v. Parmar*, 2014 WL

13  12586073, at *3, *7 (C.D. Cal. June 23, 2014) (same); *cf. Myers v. Bennett Law*

14  *Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001) ("[A]t least one of the 'harms' suffered

15  by [Nevada] Plaintiffs is akin to the tort of invasion of privacy and was felt in

16  Nevada.").  In addition, the place of contracting and performance of Plaintiff's

17  contract was California. *Chiquita Fresh North America, L.L.C. v. Greene Transport*

18  *Co.*, 949 F. Supp. 2d 954, 963 (N.D. Cal. 2013) (analyzing factors such as "the place

19  of contracting" and "the place of performance" "[i]n determining which state has a

20  greater interest"); *see also Waithaka*, 966 F.3d at 34 (Massachusetts had "materially

21  greater interest" because it was where "Waithaka [] independently performed all of

22  his work pursuant to the contract").  Thus, California has a greater interest in the

23  determination of the issues in this lawsuit than Delaware.  *See Bridge Fund Capital*

24  *Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010) ("California

25  has a substantial, case-specific interest in protecting its resident franchisees from

26  losing statutory protections against fraud and unfair business practices."); *Lockman*

27  *Foundation v. Evangelical Alliance Mission*, 930 F.2d 764, 771 (9th Cir. 1991)

28

1    (California has an interest "in seeing its citizens compensated for torts committed

2    against them").

3            Second, "California would suffer a significant impairment of its public policy if

4    this arbitration clause were enforced against its citizens." *Id.*  For instance, the

5    California Supreme Court has noted that class action waivers are unconscionable

6    "when the waiver is found in a consumer contract of adhesion in a setting in which

7    disputes between the contracting parties predictably involve small amounts of

8    damages, and when it is alleged that the party with the superior bargaining power has

9    carried out a scheme to deliberately cheat large numbers of consumers out of

10   individually small sums of money." *Gentry v. Superior Court*, 165 P.3d 556, 561-62

11   (Cal. 2007).  Further, California law—unlike the law of other jurisdictions—mandates

12   that that a contract provision purporting to prevent a consumer from seeking a public

13   injunction for violation of California consumer protection laws is unenforceable. *See*

14   *McGill v. Citibank, N.A.*, 393 P.3d 85, 88 (Cal. 2017) ("Agreements to arbitrate

15   claims for public injunctive relief under the CLRA, the UCL, or the false advertising

16   law are not enforceable in California.").

17           Finally, California has enforced protections for employees against arbitration

18   clauses. *Cf.* Cal. Assembly Bill No. 51 (2019) (banning persons from "requiring any

19   applicant for employment or any employee to waive any right, forum, or procedure

20   for a violation of any provision of the California Fair Employment and Housing Act

21   (FEHA) or other specific statutes governing employment as a condition of

22   employment, continued employment, or the receipt of any employment-related

23   benefit").  Thus, California law overrides the "Governing Law" clause in the 2019

24   TOS.

25                *2.  The Arbitration Clause Is Unenforceable Under California
                       Law*

26           Under California law, the arbitration clause here is plainly unenforceable. The

27   arbitration clause precludes any ability for Plaintiff to seek public injunctive relief.

28

---

1    *See* 2019 TOS § 11(b) ("TO THE EXTENT PERMITTED BY LAW, THE PARTIES

2    AGREE THAT ANY DISPUTE RESOLUTION PROCEEDINGS WILL BE

3    CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT ON A CLASS OR

4    COLLECTIVE BASIS."); 11(h) ("THIS AGREEMENT SHALL NOT BE

5    INTERPRETED AS REQUIRING EITHER PARTY TO ARBITRATE DISPUTES

6    ON A CLASS, COLLECTIVE OR REPRESENTATIVE BASIS, EVEN IF A

7    COURT OR ARBITRATOR INVALIDATES OR MODIFIES OR DECLINES TO

8    ENFORCE THIS AGREEMENT IN WHOLE OR IN PART.").  Further, § 11(h)

9    holds that public injunctive relief could not be severed from the rest of the arbitration

10   clause, and Cal. Penal Code §§ 631 and 635 are sufficiently analogous to the CLRA

11   and UCL because they were enacted primarily to benefit the general public with

12   statutorily-allowed injunctive relief.  *Compare Blair v. Rent-A-Center, Inc.*, 928 F.3d

13   819, 824 (9th Cir. 2019) ("The California Supreme Court found that public injunctive

14   relief available under the UCL and CLRA, among other statutes, is "[b]y definition ...

15   primarily 'for the benefit of the general public," and therefore [w]aiver of the right to

16   seek public injunctive relief under these statutes … are invalid and unenforceable

17   under California law.") (internal citations and quotations omitted), *with* Cal. Penal

18   Code § 637.2(b) ("Any person may … bring an action to enjoin and restrain any

19   violation of this chapter"), Cal. Penal Code § 630 ("The Legislature by this chapter

20   intends to protect the right of privacy of the people of this state."), *id.* ("The

21   Legislature hereby declares that advances in science and technology have led to the

22   development of new devices and techniques for the purpose of eavesdropping upon

23   private communications and that the invasion of privacy resulting from the continual

24   and increasing use of such devices and techniques has created a serious threat to the

25   free exercise of personal liberties and cannot be tolerated in a free and civilized

26   society.").

27          Thus, under the *McGill* rule, the entire arbitration clause must be stricken

28   because it precludes public injunctive relief, and such relief is not severable from the

---

clause.  *McGovern v. U.S. Bank N.A.*, 2020 WL 4582687, at *2 (S.D. Cal. Aug. 10, 2020) ("The public injunction waiver language in the arbitration provision in Plaintiff's Deposit Account Agreement is encompassed by *McGill*, meaning that the provision is invalid and unenforceable.  Further, similar to the provision in McArdle, the arbitration section of the Deposit Account Agreement contains an unambiguous non-severability clause … This clause plainly invalidates the entire arbitration agreement section as a result of the invalidity and unenforceability of the public injunction waiver provision therein.").[4]

Further, the arbitration clause is unconscionable under California law.  Because the FAA does not apply to the arbitration clause in the 2019 TOS, otherwise preempted principles of California law apply to the arbitration clause.  *See Garrido v. Air Liquide Industrial U.S. LP*, 241 Cal. App. 4th 833, 845 (Cal. Ct. App. 2015) ("While [the California Supreme Court] made clear that the [*Gentry v. Superior Court*, 165 P.3d 556 (Cal. 2007)] rule is preempted by the FAA, it did not go beyond that finding. Therefore, the *Gentry* rule remains valid under the CAA."); *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 241 (Cal. Ct. App. 2016) ("CW Painting did not meet its burden to show the FAA applied, and therefore its arguments the FAA preempts California statutes or case law lack merit."); *Penilla v. Westmont Corp.*, 3 Cal. App. 5th 205, 220 n.12 (Cal. Ct. App. 2016) ("The arbitration provision provides that it is governed by the California Arbitration Act … and does not mention the Federal Arbitration Act … Thus, appellants' citations to federal case law interpreting arbitration agreements solely under the FAA is inapposite.").  And under California law, "[i]f the court as a matter of law finds the contract or any clause of the contract

---

[4] Any ambiguity as to the severability of public injunctive relief from the arbitration clause must be construed against the drafter of the agreement.  *Rainier Credit Co.*, 171 Cal. App. 3d at 263 (noting it is a "legal maxim that an ambiguity in a contract will be construed against the drafter of the contract.") (citing Cal. Civ. Code § 1654); *Congdon*, 291 F. Supp. 3d at 1022 ("In the case of ambiguous terms within a form contract, such terms would be construed against the drafter.").

1
2
3
4
5
6
7
8

to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause."  Cal. Civ. Code § 1670.5(a); *Discover Bank v. Superior Court*, 113 P.3d 1100, 1110 (Cal. 2005) (holding class arbitration waiver unconscionable "when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages … at least to the extent the obligation at issue is governed by California law").

9
10

Here, the arbitration clause is unconscionable under California law for numerous reasons:

11
12
13
14
15
16
17
18

    1.  The clause constitutes "unfair surprise" because the updated 2019 TOS were sent to Plaintiff in an email without any prompt to affirmatively assent to the terms, and Plaintiff did not have notice of the update.  *OTO, L.L.C. v. Kho*, 447 P.3d 680, 692 (Cal. 2019) ("The document itself and the manner of its presentation did not promote voluntary or informed agreement to its terms … Where an employee is induced to sign an arbitration agreement through 'sharp practices' and surprise the consent rationale carries less force.") (internal citations omitted).

19
20
21
22

    2.  The clause is adhesive because "it was imposed on employees as a condition of employment and there was no opportunity to negotiate."  *Armendariz v. Foundation Health Psychcare Services, Inc.*, 6 P.3d 669, 690 (Cal. 2000)[5];

23
24
25
26
27
28

---

[5] Amazon contends that *Armendariz* is inapplicable because it concerns "employees" rather than "independent contractors."  Mtn. at 15, n.3.  But the California Arbitration Act specifically defines "employee" to include "any person who is, was, or who claims to have been misclassified as an independent contractor."  Cal. Civ. Code § 1280(f).  Further, Defendant hypocritically argues that the Delaware Uniform Arbitration Act "applies to arbitration agreements between employers and employees," and that "[*a*] *fortiori*, then, the Act applies to independent contractor relationships."  Mtn. at 12:17-22.  Defendant cannot have it both ways.

*Garrido*, 241 Cal. App. 4th at 847 ("[T]he instant case involves precisely the sort of arbitration agreement with a class action waiver entered as a condition of employment by low-wage, limited-information employees in vulnerable, at-will employment environments that *Gentry* clearly held was unenforceable."); *Carbajal*, 245 Cal. App. 4th at 243 ("It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability.") (internal quotations omitted).[6] Further, the arbitration clause "operate[s] effectively as [an] exculpatory contract clause[] that [is] contrary to public policy." *Discover Bank*, 113 P.3d at 1108.

3. The clause is confusing and contradictory because it both prohibits class arbitrations but also states "NO ARBITRATOR IS AUTHORIZED TO CONSOLIDATE CLAIMS OF MORE THAN ONE INDIVIDUAL." 2019 TOS § 11(g); *see also Penilla*, 3 Cal. App. 5th at 216-17 ("[O]ne sentence states that 'class action claims' are subject to arbitration, but another provides that 'no dispute shall be consolidated with any other dispute.' Thus, it is unclear what class action claims, if any, could be brought in arbitration … In light of this lack of clarity, a reasonable person would have been at best surprised and at worst confused by the scope of the arbitration

---

[6] Defendant cites *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017) for the proposition that an agreement presented "on a take-it-or-leave-it basis" is not unconscionable. However, *Poublon* evaluated whether an arbitration clause was unconscionable under the FAA, which "preempts state statutes and state common law principles that undercut the enforceability of arbitration agreements." *Id.* at 1259 (internal quotations omitted). But where, as here, the FAA does not apply, "the policies remain intact." *Waithaka*, 966 F.3d at 33; *see also Penilla*, 3 Cal. App. 5th at 220 n.12 ("The arbitration provision provides that it is governed by the California Arbitration Act … and does not mention the Federal Arbitration Act … Thus, appellants' citations to federal case law interpreting arbitration agreements solely under the FAA is inapposite.").

provision and the limitations on remedies available in arbitration."). And under California law—when not preempted by the FAA, as here—class arbitration waivers are unconscionable. *Discover Bank*, 113 P.3d at 1110.

4. The clause is prohibitively expensive because it requires Plaintiff to front the initial $200 of arbitration costs. 2019 TOS § 11(k); *see also Penilla*, 3 Cal. App. 5th at 218 ("It is substantively unconscionable to require a consumer to give up the right to utilize the judicial system, while imposing arbitral forum fees that are prohibitively high."); *see also id.* at 221 ("[I]n the context of mandatory employment arbitration agreements that apply to unwaivable statutory claims—such as FEHA claims—our Supreme Court has held that regardless of an employee's income, an employer must pay all costs unique to arbitration, including arbitrator fees."). This is especially problematic given that, according to the Federal Trade Commission, Amazon shorted Flex Drivers on their salaries and improperly pocketed tips meant for Flex Drivers.[7] Further, at individual arbitration, Plaintiff would only be entitled to a modest recovery of only a few thousand dollars. *Garrido*, 241 Cal. App. 4th at 846 ("A potential award of as large as $37,000 has been found to" support finding a class waiver unconscionable). And the "requirement that numerous employees suffering from the same illegal practice each separately prove the employer's wrongdoing is an inefficiency that may substantially drive up the costs of arbitration and diminish the prospect that the [wiretap] laws will be enforced." *Id.* at 846-47.

---

[7] Federal Trade Commission, *Amazon To Pay $61.7 Million to Settle FTC Charges It Withheld Some Customer Tips from Amazon Flex Drivers*, Feb. 2, 2021, https://www.ftc.gov/news-events/press-releases/2021/02/amazon-pay-617-million-settle-ftc-charges-it-withheld-some.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5.  The clause is one-sided because if an employee "assert[s] a claim against
    Amazon that is not subject to individual arbitration … and there is then
    pending or later filed any claim against Amazon asserted by [the employee]
    or on [the employee's] behalf that is subject to individual arbitration," the
    employee agrees to stay "any claim not subject to individual arbitration."
    2019 TOS § 11(m).  However, the same stay does not apply to claims by
    Amazon.  That is, if Amazon brings a claim against an employee that is not
    subject to arbitration, and then it brings a claim that is subject to arbitration,
    Amazon would *not* be required to stay the non-arbitrable claim.  *Carmona*,
    226 Cal. App. 4th at 87 ("Courts have repeatedly found this type of one-
    sided provision—where the employer exempts claims only it would bring
    from arbitration while restricting any employee claims to arbitration—to be
    substantively unconscionable."); *Carbajal*, 245 Cal. App. 4th at 248 ("[I]t is
    unfairly one-sided for an employer with superior bargaining power to
    impose arbitration on the employee as plaintiff but not to accept such
    limitations when it seeks to prosecute a claim against the employee, without
    at least some reasonable justification for such one-sidedness based on
    'business realities.'").  The clause is also one-side because "[a]lthough
    styled as a mutual prohibition on representative or class actions, it is
    difficult to envision the circumstances under which the provision might
    negatively impact [Amazon]," because Amazon "typically do[es] not sue
    [its] customers in class action lawsuits."  *Discover Bank*, 113 P.3d at 1109.

6.  The clause does not explicitly permit judicial review of any arbitration
    award.  *Armendariz*, 6 P.3d at 685 ("Although judicial scrutiny of
    arbitration awards necessarily is limited, such review is sufficient to ensure
    that arbitrators comply with the requirements of the statute at issue.").

7. The clause prohibits Plaintiff from seeking public injunctive relief, which is mandatory under California law. *Cf. Penilla*, 3 Cal. App. 5th at 223 ("The improper limitation on punitive damages further supports a finding of substantive unconscionability.").

Accordingly, the arbitration clause is unconscionable under California and should not be enforced as such. Cal. Civ. Code § 1670.5(a).

**B.   Even If Delaware Law Governs The Arbitration Clause In The 2019 TOS, Plaintiff Is Not Required To Arbitrate His Claims**

Even if Delaware law fills the void left by the inapplicability of the FAA to Plaintiff's claims—and it does not—Plaintiff is still not required to arbitrate his claims under Delaware law. As an initial matter, where there is a "substantial question whether a valid agreement to arbitrate in [Delaware] was made … it shall be tried forthwith in said Court." Here, there are many "substantial questions" as to whether Plaintiff agreed to arbitrate his claims. *See* Argument §§ I-III, *supra*. In addition, the arbitration clause is unconscionable under Delaware law for the same reasons it is unconscionable under California law. *See, e.g.*, *Fritz v. Nationwide Mut. Ins. Co.*, 1990 WL 186448, at *5 (Del. Ch. 1990) (finding arbitration clause unconscionable where "[t]he arbitration clause was embodied in a pre-printed boilerplate contract, offered on a take-it-or-leave-it basis by a party of stronger economic position"); *Worldwide Ins, Group v. Klopp*, 603 A.2d 788, 790 (Del. 1992) ("[O]ur approval of the arbitration concept does not extend to any feature of a contract of adhesion, which, in whole or in part, is unconscionable within the meaning of [DEL. CODE tit. 6 § 2-303]."); *id.* at 791 (finding arbitration provision in insurance contract "contrary to the public policy of [Delaware]"); *Graham v. State Farm Mutual Auto Ins. Co.*, 565 A.2d 908, 912 (Del. 1989) ("If the arbitration mechanism established by the policy had been unfairly structured, a finding of unconscionability might be appropriate.").

## V.   THE COURT SHOULD NEITHER STAY NOR DISMISS THIS ACTION

Finally, Amazon argues that the Court should stay or dismiss this action "[b]ecause Plaintiff agreed to a valid and enforceable arbitration provision that applies to the claims in this action." Mtn. at 15:14-15. This is of course not true for the myriad reasons set forth above. Plaintiff's claim does not fall within the ambit of the arbitration clause, Plaintiff is exempt from the FAA, and even if the 2019 TOS applies—and it does not—Plaintiff would not be required to arbitrate his claims under either California or Delaware law.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety.

Dated:  April 12, 2021

Respectfully submitted,

**BURSOR & FISHER, P.A**.

By:  */s/ Neal J. Deckant*
Neal J. Deckant

L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
ndeckant@bursor.com

*Attorneys for Plaintiff*