UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DRICKEY JACKSON, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>         Defendant. | Case No.:  20-cv-2365-WQH-BGS<br><br>**ORDER** |

HAYES, Judge:

  The matter before the Court is the Motion to Compel Arbitration, Dismiss, or, in the Alternative, to Stay filed by Defendant Amazon.com, Inc. (ECF No. 15).

## I. BACKGROUND

  On February 19, 2021, Plaintiff Drickey Jackson filed a First Amended Class Action Complaint ("FAC") against Defendant Amazon.com, Inc. ("Amazon"). (ECF No. 11). In the FAC, Plaintiff alleges that he is a member of the Amazon Flex program—"a program by which Amazon pays regular people to deliver packages." (*Id.* ¶ 11). Plaintiff alleges that he and many of the other approximately 800 Flex drivers joined "closed" or private Facebook groups to discuss "a myriad of issues surrounding their employment," including strikes, protests, pay, benefits, deliveries, working conditions, and unionizing efforts. (*Id.* ¶¶ 2, 14). Plaintiff alleges that he has been a member of closed Facebook groups for Flex drivers since 2016. Plaintiff alleges that he has communicated with other Flex drivers in

the closed Facebook groups and "believed he was only communicating with other Flex Drivers." (*Id.* ¶ 29). Plaintiff alleges that Defendant Amazon "has been secretly monitoring and wiretapping these closed Facebook groups." (*Id.* ¶ 17). Plaintiff alleges that Amazon has created an "Advocacy Operations Social Listening Team" to "monitor and/or intercept[]" posts to closed Facebook groups "in real time . . . using automated monitoring tools." (*Id.* ¶ 19). Plaintiff alleges that his posts were tracked and intercepted by Amazon without Plaintiff's consent.

Plaintiff seeks to represent a class of "all Flex Drivers in the United States who were members [of] the closed Facebook groups, and whose electronic communications were intercepted by Defendant" (the "Class"). (*Id.* ¶ 30). Plaintiff further seeks to represent a subclass of "all Class members in the State of California who were members of the closed Facebook groups, and whose electronic communications were intercepted by Defendant" (the "California Subclass"). (*Id.* ¶ 31). Plaintiff brings the following claims on behalf of himself, the Class, and the California Subclass: 1) interception and disclosure of wire, oral, or electronic communications in violation of the federal Wiretap Act, 18 U.S.C. §§ 2510, *et seq.*; 2) manufacture, distribution, possession, and advertising of wire, oral, or electronic communication interception devices in violation of the federal Wiretap Act, 18 U.S.C. § 2512; and 3) violation of the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.* Plaintiff brings the following claims on behalf of himself and California Subclass: 1) violation of the California Invasion of Privacy Act, Cal. Pen. Code § 631; 2) violation of the California Invasion of Privacy Act, Cal. Pen. Code § 635; 3) intrusion upon seclusion; and 4) invasion of privacy under the California Constitution. Plaintiff seeks declaratory relief, damages, including punitive damages, restitution, injunctive relief, and attorneys' fees and costs.

On March 16, 2021, Defendant Amazon filed a Motion to Compel Arbitration, Dismiss, or, in the Alternative, to Stay. (ECF No. 15). Amazon moves to compel arbitration of Plaintiff's claims on an individual basis pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, or Delaware law. Amazon further moves to stay or dismiss

any remaining claims. On April 12, 2021, Plaintiff filed an Opposition to the Motion to Compel Arbitration. (ECF No. 16). On April 26, 2021, Amazon filed a Reply. (ECF No. 17). On August 3, 2021, the Court heard oral argument on the Motion to Compel Arbitration.

## II.   CONTENTIONS

Defendant Amazon contends that Plaintiff agreed to arbitrate the claims alleged in the FAC on an individual basis. Amazon contends that the Amazon Flex Terms of Service that took effect on October 3, 2019 ("2019 TOS") apply in this case because Plaintiff continued to perform deliveries after he "received notice that Amazon was introducing the 2019 TOS." (ECF No. 15-1 at 10). Amazon contends that "[t]he heart of this lawsuit is the allegation that Amazon monitored closed Facebook groups in which Plaintiff and other Amazon Flex drivers discussed their experiences with the Amazon Flex program— including matters central to Flex drivers' contractual relationship with Amazon." (*Id.* at 14). Amazon contends that there is no "serious dispute" that Plaintiff's claims fall within the scope of the arbitration provision. (*Id.*). Amazon further contends that even if the Amazon Flex Terms of Service that took effect on September 21, 2016 ("2016 TOS") apply in this case, "its arbitration agreement would be enforceable under California law." (*Id.* at 17 n.1).

Plaintiff Jackson contends that the 2016 TOS apply in this case. Plaintiff contends that "Amazon did not provide notice of the 2019 TOS, [and] Plaintiff never assented to the updated terms." (ECF No. 16 at 19). Plaintiff contends that he is not required to arbitrate his claims because the Court of Appeals for the Ninth Circuit held in *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), that the arbitration provision in the 2016 TOS is void for lack of governing law. Plaintiff contends that the claims alleged in the FAC do not fall within the scope of the arbitration provision because the claims are "about Amazon spying on Plaintiff's private posts to a private Facebook group" and do not relate to Plaintiff's participation in the Flex program or performance of services. (*Id.* at 11).

Plaintiff further contends that the arbitration provision is unenforceable and unconscionable.

## III.   FACTS[1]

Plaintiff Jackson is a participant in the Amazon Flex program. The Director of Amazon Flex Technology states in a Declaration that the Flex program "allows Amazon to crowdsource independent contractor delivery partners through a smartphone application known as the Amazon Flex app." (Paramanandan Decl., ECF No. 15-3 ¶ 3). Participants in the Flex program deliver groceries, packages, and goods using their personal vehicles. To participate in the Flex program, individuals must download the Amazon Flex app, create an account, and agree to the Amazon Flex Terms of Service.

The Director states that "[t]here have been multiple versions" of the Amazon Flex Terms of Service. (*Id.* ¶ 6). The Director states that the 2016 TOS took effect on September 21, 2016. The 2016 TOS provides, in relevant part:

**11. Dispute Resolution, Submission to Arbitration.**

a) SUBJECT TO YOUR RIGHT TO OPT OUT OF ARBITRATION, THE PARTIES WILL RESOLVE BY FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT, ANY DISPUTE OR CLAIM, WHETHER BASED ON CONTRACT, COMMON LAW, OR STATUTE, ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT, TO YOUR PARTICIPATION IN THE PROGRAM OR TO YOUR PERFORMANCE OF SERVICES.

(2016 TOS, Ex. A to Paramanandan Decl., ECF No. 15-3 at 13). The 2016 TOS further provides:

**12. Governing Law.**

The interpretation of this Agreement is governed by the law of the state of

---

[1] Amazon requests that the Court take judicial notice of three Facebook Help Center webpages. (ECF No. 15-2). The Court declines to take judicial notice of the requested documents because judicial notice is unnecessary for this Order. *See Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n.12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

Washington without regard to its conflict of laws principles, except for Section 11 of this Agreement, which is governed by the Federal Arbitration Act and applicable federal law.

**13. Modifications.**

Amazon may modify this Agreement, including the Program Policies, at any time by providing notice to you through the Amazon Flex app or otherwise providing notice to you. You are responsible for reviewing this Agreement regularly to stay informed of any modifications. If you continue to perform the Services or access Licensed Materials (including accessing the Amazon Flex app) after the effective date of any modification to this Agreement, you agree to be bound by such modifications.

(*Id.* at 14-15).

The Director of Amazon Flex Technology states, "Plaintiff Drickey Jackson accepted the 2016 TOS and his Amazon Flex account was activated on or about December 6, 2016. He did not opt-out of the arbitration provision in the 2016 TOS." (Paramanandan Decl., ECF No. 15-3 ¶ 11).

The Director states that the 2019 TOS took effect on October 3, 2019. The first page of the 2019 TOS provides, in relevant part:

**This Agreement updates and replaces any version of the Terms of Service you previously accepted.** This Agreement takes effect on the earlier date of the date on which you click "I agree and accept" in the box below or, if you accepted a prior version of the Terms of Service, the first date on which you provide Services after Amazon made this Agreement available in the "Legal Information" section of the Amazon Flex app and sent to your email address a hyperlink to this Agreement ("Effective Date").

(2019 TOS, Ex. B to Paramanandan Decl., ECF No. 15-3 at 24). The 2019 TOS includes several material terms related to arbitration that differ from the 2016 TOS. (*See id.* at 29-31).

The Director of Amazon Flex Technology states, "When the 2019 TOS went into effect on October 3, 2019, Amazon distributed the 2019 TOS to existing Flex drivers (*i.e.*, those who had joined the Amazon Flex program and agreed to the TOS before the 2019

5

TOS became effective) via email sent to the email address each such driver agreed to keep current." (Paramanandan Decl., ECF No. 15-3 ¶ 13). The Director states:

> Amazon sent the 2019 TOS to Plaintiff via email on October 3, 2019, and afterward he performed additional Flex deliveries. Specifically, Plaintiff scheduled and completed six scheduled blocks of deliveries in March and April of 2020.

(*Id.* ¶ 14).

## IV.   APPLICABLE AGREEMENT

Amazon contends that the 2019 TOS applies in this case because Plaintiff "received notice—through the email address that he agreed to keep current—that Amazon was introducing the new 2019 TOS on October 3, 2019, and continued to perform deliveries afterward." (ECF No. 15-1 at 13). Amazon contends that "Plaintiff does not deny that he accepted the 2016 TOS or that he performed Flex services after October 3, 2019." (ECF No. 17 at 7). Amazon contends that Plaintiff fails to assert or provide evidence that he "never got the email from Amazon" containing the 2019 TOS. (*Id.* at 8).

Plaintiff contends that the 2016 TOS applies in this case because "Amazon did not provide notice of the 2019 TOS, [and] Plaintiff never assented to the updated terms." (ECF No. 16 at 19). Plaintiff contends that Amazon fails to provide evidence that Plaintiff ever opened the October 3rd email, viewed the 2019 TOS, or otherwise assented to the 2019 TOS. Plaintiff contends that Amazon does not provide the Court with a copy of the email or state "whether the 2019 TOS was sent as a separate email or as part of an email dealing with another aspect of the Amazon Flex program." (*Id.* at 19).

"In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In this case, the law of Washington, Delaware, or California could apply to determine whether the 2016 TOS or 2019 TOS applies. *See* 2016 TOS, Ex. A to Paramanandan Decl., ECF No. 15-3 at 14 (Washington choice-of-law

provision); 2019 TOS, Ex. B to Paramanandan Decl., ECF No. 15-3 at 30 (Delaware choice-of-law provision); *see also Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1124 (9th Cir. 2008) (stating that the court determines what law governs contract formation "as if there were no choice of law clause"). The laws of contract formation of Washington, Delaware, and California law are materially the same, and the parties rely primarily on California law. The Court applies California law to determine the applicable agreement but would reach the same result under Washington or Delaware law. *See Nguyen*, 763 F.3d at 1175 (explaining that the court need not determine what law applies where the laws of the states in question "dictate the same outcome").

"Under California law, mutual assent is a required element of contract formation." *Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); *see Yakima Cty. (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 388 (Wash. 1993) (same under Washington law); *Continental Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1232 (Del. Chancery Ct. 2000) (same under Delaware law).

> "Mutual assent may be manifested by written or spoken words, or by conduct," *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999), and acceptance of contract terms may be implied through action or inaction, *see Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991). Thus, "an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains." *Windsor Mills, Inc. v. Collins & Aikman Corp*., 25 Cal. App. 3d 987, 991 (1972).

*Knutson*, 771 F.3d at 565. "[A]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious. This principle of knowing consent applies with particular force to provisions for arbitration." *Id.* at 566 (alteration in original) (quoting *Windsor Mills*, 25 Cal. App. 3d at 992).

"The internet 'has not fundamentally changed the requirement that mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract.'" *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 483 (9th Cir. 2020) (quoting

*Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862 (2016)). Absent actual notice of the terms of an internet contract, mutual assent turns on whether a "reasonably prudent" user would have "inquiry notice" of the "agreement's existence and contents." *Long*, 245 Cal. App. 4th at 863 (citing *Nguyen*, 763 F.3d at 1177). "As the party alleging the existence of a contract, [Amazon] has the burden to prove each and every element of a valid contract—including mutual assent." *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020).

In *In re Facebook Biometric Information Privacy Litigation*, the plaintiffs, current Facebook users, registered to use Facebook and agreed to the terms of use between 2005 and 2009. 185 F. Supp. 3d 1155, 1162-64 (N.D. Cal. 2016). On January 30, 2015, Facebook revised the terms of use and included a California choice-of-law provision. Facebook "emailed all users with registered email addresses about this update." *Id.* at 1164. The email was titled, "We're updating our terms and policies and introducing Privacy Basics," and "contained hyperlinks to the new Terms of Use." *Id.* Facebook also provided "jewel notifications" about the update. *Id.* When a user logged into Facebook, the "notification tray at the top of the site" indicated that the user "had a new message." *Id.* When the user clicked the notification, "it would let [the user] know that . . . there [were] new Terms proposed and getting updated." *Id.* (second and third alterations in original). The notification "persisted a number of times in case [the user] didn't visit." *Id.* (alteration in original). In addition, Facebook published updates about the new terms of use on its governance page, in the Privacy Basics Center, in the Facebook News Room, and on the terms page. Facebook "took users' continued use as assent to the terms." *Id.*

The plaintiffs sued Facebook for unlawfully collecting and storing biometric data derived from users' faces under the Illinois Biometric Information Privacy Act. Facebook filed a motion to dismiss and motion for summary judgment on the grounds that the California choice-of-law provision in the 2015 terms of use precluded suing on an Illinois statute. The plaintiffs contended that they never assented to the 2015 terms. The District Court for the Northern District of California determined that "Facebook has shown by a

preponderance of the evidence that all three plaintiffs agreed to the current user agreement." *Id.* at 1167. The court stated:

> [The plaintiffs] were provided notice that the terms of the user agreement were changing through an email from Facebook sent directly to the email addresses each plaintiff had on file with Facebook. Each plaintiff -- none of whom disputes remaining an active Facebook user to this day . . . -- would also have received a "jewel notification" on his individual Facebook newsfeed. This individualized notice in combination with a user's continued use is enough for notice and assent.

*Id.*; *accord Webber v. Uber Techs., Inc.*, No. CV 18-2941 PSG-GJS, 2018 U.S. Dist. LEXIS 232200, at *10-12 (C.D. Cal. Sept. 5, 2018) ("Plaintiff Faulkner received an email in November 2016 notifying him that Uber's Terms had been updated, and that continued use of the service would constitute assent to those Terms. . . . Plaintiff continued to use the App after receipt of that email. . . . Plaintiff[] [was] on reasonable notice of Uber's Terms, and thus assented to them . . . by continuing to use the service after the Terms were updated."); *cf. Stover*, 978 F.3d at 1084-86 (holding that the Stover failed to meet her burden to prove that she had notice of the 2018 terms where the 2014 terms "contained a change-of-terms provision stating that '[e]ach time' Stover 'accessed . . . the . . . Product Website,' she would be manifesting assent to 'the then current' terms of the agreement," but there was no indication that Stover "had notice of the changed terms when she visited Experian's website in 2018").

In this case, the Director of Amazon Flex Technology states in a Declaration that "Plaintiff Drickey Jackson accepted the 2016 TOS and his Amazon Flex account was activated on or about December 6, 2016." (Paramanandan Decl., ECF No. 15-3 ¶ 11). Plaintiff does not dispute that he assented to the 2016 TOS. The 2016 TOS state, in relevant part:

**13. Modifications**

Amazon may modify this Agreement, including the Program Policies, at any time by providing notice to you through the Amazon Flex app or otherwise providing notice to you. You are responsible for reviewing this Agreement

9

> regularly to stay informed of any modifications. If you continue to perform the Services or access Licensed Materials (including accessing the Amazon Flex app) after the effective date of any modification to this Agreement, you agree to be bound by such modifications.

(2016 TOS, Ex. A to Paramanandan Decl., ECF No. 15-3 at 14-15). The Director states that Amazon updated the TOS on October 3, 2019. The Director states, "When the 2019 TOS went into effect on October 3, 2019, Amazon distributed the 2019 TOS to existing Flex drivers (*i.e.*, those who had joined the Amazon Flex program and agreed to the TOS before the 2019 TOS became effective) via email sent to the email address each such driver agreed to keep current." (Paramanandan Decl., ECF No. 15-3 ¶ 13). The Director states:

> Amazon sent the 2019 TOS to Plaintiff via email on October 3, 2019, and afterward he performed additional Flex deliveries. Specifically, Plaintiff scheduled and completed six scheduled blocks of deliveries in March and April of 2020.

(*Id.* ¶ 14). The Court cannot conclude from the allegations in the Complaint or the evidence presented by Amazon that the October 3, 2019, email provided Plaintiff individualized notice of the "agreement's existence and contents" adequate to demonstrate that Plaintiff assented to the 2019 TOS. *Long*, 245 Cal. App. 4th at 863 (citing *Nguyen*, 763 F.3d at 1177); *see Stover*, 978 F.3d at 1086 ("[I]n order for changes in terms to be binding pursuant to a change-of-terms provision in the original contract, both parties to the contract—not just the drafting party—must have notice of the change in contract terms."). Amazon fails to meet its burden to demonstrate mutual assent to the 2019 TOS. The Court concludes that the 2016 TOS applies in this case.

## V. GOVERNING LAW

Amazon contends that the arbitration provision in the 2016 TOS is not void for lack of governing law. Amazon contends that the Court of Appeals for the Ninth Circuit held in *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020), that the arbitration provision in the 2016 TOS is not enforceable under Washington law but "did not address whether some other body of state law could be applied because the parties did not ask the court to

10

apply any other body of state law." (ECF No. 15-1 at 17). Amazon contends that the arbitration provision in the 2016 TOS is enforceable under California law.

Plaintiff contends that pursuant to *Rittmann*, Plaintiff is exempt from the FAA, and "the arbitration clause in the 2016 TOS is void for lack of governing law." (ECF No. 16 at 18). Plaintiff contends that the 2016 TOS does not make clear whether the parties intended the arbitration provision to remain enforceable in absence of the FAA, and California law "cannot fill the void if the FAA does not apply." (*Id.* at 21).

In *Rittmann v. Amazon.com, Inc.*, an Amazon Flex driver brought a suit against Amazon for wage and hour violations under federal, California, and Washington law. 971 F.3d 904, 907 (9th Cir. 2020), *reh'g en banc denied*, 2020 U.S. App. LEXIS 30695 (9th Cir. Sept. 25, 2020), *cert. denied*, 2021 U.S. LEXIS 906 (Feb. 22, 2021). Amazon filed a motion to compel arbitration, asserting that the Flex driver was required to arbitrate his claims pursuant to the 2016 TOS. The District Court for the Western District of Washington denied the motion to compel arbitration, concluding that there was no valid arbitration agreement between Amazon and the Flex driver. The Court of Appeals for the Ninth Circuit affirmed.

The court of appeals examined the choice-of-law provision in the 2016 TOS, which states, "These Terms are governed by the laws of the state of Washington without regard to its conflict of laws principles, except for Section 11 of this Agreement [the arbitration provision], which is governed by the Federal Arbitration Act and applicable federal law." *Id.* at 920. The court first determined that "[Flex] workers are exempt from the FAA's coverage provisions." *Id.* at 919. The court stated:

> The FAA contains a number of enforcement mechanisms for private parties to compel arbitration pursuant to a valid arbitration agreement. The FAA, however, exempts certain contracts from its scope, specifically the employment contracts of "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118-19 (2001).

11

*Id.* at 909 (alteration in original). The court determined that "[Flex] drivers' transportation of goods wholly within a state are [] part of a continuous interstate transportation, and those drivers are engaged in interstate commerce for § 1's purposes." *Id.* at 916. Accordingly, "[Flex] delivery providers fall within the exemption," and their employment contracts are not subject to the FAA. *Id.* at 919.

The court then rejected Amazon's contention that "the district court should have severed the choice-of-FAA provision . . . and, thus, Washington law would apply to the TOS in its entirety." *Id.* at 920. Applying Washington law, the court determined:

> Were we to sever the choice-of-FAA clause, the governing law provision would state that the TOS is "governed by the law of the state of Washington . . ., except for Section 11 of this Agreement." In that case, the plain language of the contract would prohibit applying Washington law to the arbitration provision.
>
> To escape that result, Amazon would have us go further and sever the entire "except for" clause. In light of the fact that the provision expressly treats the arbitration provision differently, that approach would violate the principle that we are not free to rewrite the contract under the guise of severability. . . . Because it is not clear that the parties intended to apply Washington law to the arbitration provision in the event the FAA did not apply, we construe ambiguity in the contract against Amazon to avoid that result.
>
> Amazon's choice-of-law arguments likewise fail. . . . [W]e cannot sever the clause that applies Washington law to the contract "except for Section 11" from the governing law provision without impermissibly rewriting the contract. Amazon cites no authority that would allow us to conclude that the presumption in favor of local law overcomes express contractual language that precludes its application.
>
> Because there is no law that governs the arbitration provision, we agree with the district court that there is no valid arbitration agreement.

*Id.* at 920-21.

In this case, Plaintiff is an Amazon Flex driver "exempt from the FAA's coverage provisions." *Id.* at 919. "When a contract with an arbitration provision falls beyond the reach of the FAA, courts look to state law to decide whether arbitration should be

compelled nonetheless." *Breazeale v. Victim Servs., Inc.*, 198 F. Supp. 3d 1070, 1079 (N.D. Cal. 2016); *see Rittmann*, 971 F.3d at 920. The Court applies the choice-of-law rules of the forum state, which in this case is California. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010). "Under California law, the choice-of-law rules differ depending on whether the parties have included a choice-of-law agreement in their contract . . . ." *Id.* The choice-of-law provision in the 2016 TOS provides:

> The interpretation of this Agreement is governed by the law of the state of Washington without regard to its conflict of laws principles, except for Section 11 of this Agreement, which is governed by the Federal Arbitration Act and applicable federal law.

(2016 TOS, Ex. A to Paramanandan Decl., ECF No. 15-3 at 14). In *Rittmann*, the court of appeals held that neither the FAA nor Washington law applies to the arbitration provision in the 2016 TOS. *See Rittmann*, 971 F.3d at 921. The Court concludes that there is no valid choice-of-law provision that applies to the arbitration provision in the 2016 TOS.

Where there is no choice-of-law provision, "the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state."[2] *Wash. Mut. Bank v. Superior Ct.*, 24 Cal. 4th 906, 919 (2001) (quoting *Bernhard v. Harrah's Club*, 16 Cal. 3d 313, 317-318 (1976)); *see Islam v. Lyft, Inc.*, No. 20-CV-3004 (RA), 2021 U.S. Dist. LEXIS 43839, at *47-48 (S.D.N.Y. Mar. 9, 2021) ("[T]he effect of the FAA bring found inapplicable is only that the arbitration clause contains no choice-of-law provision . . . . [T]he contract specifically provided that California law should not apply to the arbitration agreement, but said nothing about the applicability of New York law in the event that the FAA was found not to apply."). California courts have held that the California Arbitration Act, Cal. Civ. Proc. Code §§ 1281, *et seq.* ("CAA"), applies even if an agreement does not "explicitly reference the CAA." *Garrido v. Air Liquide Indus. U.S. LP*, 241 Cal. App. 4th

---

[2] In *Rittmann*, the forum state was Washington, and the court concluded that the plain language of the choice-of-law provision bars application of Washington law to the arbitration provision. There is no indication that any party in *Rittmann* contended that California law applied.

833, 841 (2015) (applying California law to an arbitration agreement with a choice-of-FAA provision where the plaintiff was exempt from the FAA); *see Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal. App. 4th 1105, 1121 (1999) ("Assuming arguendo that the FAA does not apply, we would assess the validity of the parties' arbitration agreements under the California Arbitration Act."). The plain language of the 2016 TOS does not preclude application of California law to the arbitration provision in absence of the FAA. The Court applies California state law to determine whether a valid agreement to arbitrate exists in this case.

## VI.  SCOPE OF THE ARBITRATION PROVISION

Amazon contends that there is no "serious dispute that the claims in this suit fall within the scope of the arbitration provision." (ECF No. 15-1 at 14). Amazon contends that "[t]he heart of this lawsuit is the allegation that Amazon monitored closed Facebook groups in which Plaintiff and other Amazon Flex drivers discussed their experiences with the Amazon Flex program—including matters central to Flex drivers' contractual relationship with Amazon, such as 'pay, benefits, deliveries, warehouse conditions, and driving conditions.'" (*Id.*). Amazon contends that "[t]hese claims easily 'relat[e] to' Plaintiff's 'participation in the [Amazon Flex] program' or 'performance of services.'" (*Id.* (second and third alterations in original)).

Plaintiff contends that the claims alleged in the FAC do not fall within the scope of the arbitration provision. Plaintiff contends that that this case "is about Amazon spying on Plaintiff's private posts to a private Facebook group." (ECF No. 16 at 11). Plaintiff contends that focusing on the "substance of the Facebook posts" "misses the point: the *act of wiretapping*—which is the onus for Plaintiff's claims—does not 'aris[e] out of or relat[e] in any way to [the] agreement.'" (*Id.* at 11-12 (alterations in original)). Plaintiff contends that "[a]ny broader interpretation would require Plaintiff to arbitrate his claims any time he mentioned 'Amazon Flex Driver' in a sentence" and would lead to absurd results. (*Id.* at 12).

14

"Like the FAA, the CAA provides: 'A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.'" *Lagatree*, 74 Cal. App. 4th at 1121 (quoting Cal. Civ. Proc. Code § 1281). "California law incorporates many of the basic policy objectives contained in the Federal Arbitration Act, including a presumption in favor of arbitrability and a requirement that an arbitration agreement must be enforced on the basis of state law standards that apply to contracts in general." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 971-72 (1997) (citations omitted). "Any doubts of arbitrability are resolved in favor of arbitration." *Garrido*, 241 Cal. App. 4th at 841 (citing *Wagner Constr. Co. v. Pac. Mech. Corp.*, 41 Cal. 4th 19, 26 (2007)). However, "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate." *Rice v. Downs*, 248 Cal. App. 4th 175, 185 (2016) (quoting *Bono v. David*, 147 Cal. App. 4th 1055, 1063 (2007)).

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."[3] *Mitsubishi Motors Corp. v. Soler Chrystler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Cruise v. Kroger Co.*, 233 Cal. App. 4th 390, 396 (2015). "[T]he general rule is that arbitration should be upheld unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute." *Cruise*, 233 Cal. App. 4th at 397 (quoting *Izzi v. Mesquite Country Club*, 186 Cal. App. 3d 1309, 1315 (1986)). "The burden is on the plaintiff, the party opposing arbitration, to show that the arbitration clause cannot be interpreted to cover the claims in the [operative] complaint." *EFund Capital Partners v. Pless*, 150 Cal. App. 4th 1311, 1321 (2007); *see Gravillis v. Coldwell Banker Residential Brokerage Co.*, 143

---

[3] The 2016 TOS provides, "The parties [] agree that . . . any disputes regarding the arbitrability of a claim . . . shall be decided by a court of competent jurisdiction, and not by an arbitrator." (2016 TOS, Ex. A. to Paramanandan Decl., ECF No. 15-3 at 14).

Cal. App. 4th 761, 771 (2006) ("[A]rbitration should be ordered unless the agreement clearly does not apply to the dispute in question.").

> It [i]s well established in both state and Ninth Circuit decisions that an arbitration provision that include[s] both the "arising from" or "arising out of" type of language *and* a phrase such as "in connection with" or "relating to" extend[s] the scope of an arbitration provision to also encompass tort claims having "their roots in the relationship between the parties which was created by the contract" and "every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract."

*Rice*, 248 Cal. App. 4th at 189 (citations omitted).

In *Howard v. Goldbloom*, the employee plaintiff Howard alleged that a company's board of directors abused their corporate power and breached their fiduciary duties by wrongfully diluting Howard's interest in the company's stock. 30 Cal. App. 5th 659, 661 (2018). The defendants moved to compel arbitration pursuant to four different arbitration agreements. The broadest arbitration provision provided that "the parties would arbitrate all disputes 'arising out of, relating to, or resulting from [Howard's] employment with the company or the termination of [his] employment' with the company." *Id.* at 671 (alterations in original). The trial court denied the motion to compel arbitration, and the California Court of Appeal affirmed. The court of appeal stated:

> [T]he harm Howard suffered is not measured by or dependent on the terms of his employment. Howard's claim is instead rooted in, and any harm he suffered is measured by, his rights as a company stockholder. The dispute is whether defendants wrongfully diluted the value of his shares, breached their fiduciary duties to Howard as a minority stockholder, and unjustly enriched themselves at his expense. Defendants' fiduciary duties to minority shareholders and alleged wrongs exist independently of any employment relationship . . . . Any minority shareholder, whether or not the person had ever been employed at [the company], could bring the same claims.

*Id.* at 670; *accord Oxy-Health, LLC v. H2 Enterprises*, 812 F. App'x 660, 661 (2020) (denying motion to compel arbitration of a former employee's trademark-based claims where the arbitration agreement provided that the plaintiff "agreed to arbitrate disputes

'arising out of, relating to, or resulting from [his] employment with the company'"); *cf.* *Christo v. Charles Schwab Corp.*, No. 17-cv-1843-GPC-MDD, 2018 WL 1737544, at *5 (S.D. Cal. Apr. 11, 2018) (concluding that claims that defendants released the wrong financial records "concern a dispute between Plaintiff and Defendants relating to Plaintiff's Schwab accounts and arise out of the relationship between the two parties" and, therefore, fell within the scope of an arbitration provision that provides that plaintiff agreed to arbitrate "any controversy between [Plaintiff and Defendants] relating to [Applications] . . . or in any way arising from my relationship with Schwab").

In this case, the 2016 TOS provides:

> THE PARTIES WILL RESOLVE BY FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT, ANY DISPUTE OR CLAIM, WHETHER BASED ON CONTRACT, COMMON LAW, OR STATUTE, ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT, TO YOUR PARTICIPATION IN THE PROGRAM OR TO YOUR PERFORMANCE OF SERVICES.

(2016 TOS, Ex. A to Paramanandan Decl., ECF No. 15-3 at 13). In the FAC, Plaintiff alleges that he and many of the other approximately 800 Flex drivers formed or joined private Facebook groups to discuss "a myriad of issues surrounding their employment," including strikes, protests, pay, benefits, deliveries, working conditions, and unionizing efforts. (ECF No. 11 ¶ 14). Plaintiff alleges that Amazon has been wiretapping these closed Facebook groups "to secretly observe and monitor Flex Drivers' electronic communications and confidential postings in their closed Facebook groups, through the use of monitoring tools, automated software, and dedicated employees with backgrounds in signals intelligence and communications intelligence." (*Id.* ¶ 1). Plaintiff brings claims against Amazon for intrusion upon seclusion; invasion of privacy under the California Constitution; violation of the California Invasion of Privacy Act, Cal. Pen. Code §§ 631, 635; interception and disclosure of wire, oral, or electronic communications in violation of the federal Wiretap Act, 18 U.S.C. §§ 2510, *et seq.*; manufacture, distribution, possession, and advertising of wire, oral, or electronic communication interception devices in violation

17

of the federal Wiretap Act, 18 U.S.C. § 2512; and violation of the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*

Claims for intrusion upon seclusion under California common law and claims for invasion of privacy under the California Constitution "involve[] similar elements." *Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*, 956 F.3d 589, 601 (9th Cir. 2020), *reh'g en banc denied*, 2020 U.S. App. LEXIS 19525 (9th Cir. June 23, 2020), *cert. denied*, *Facebook, Inc. v. Davis*, 2021 U.S. LEXIS 1480 (Mar. 22, 2021). "[C]ourts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Id.* (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009)). The California Invasion of Privacy Act and the federal Wiretap Act prohibit the unauthorized interception of a communication and the manufacture, possession, or sale of any eavesdropping device. *See id.* at 606-07; Cal. Pen. Code §§ 631(a), 635(a); 18 U.S.C. §§ 2511(1)(a)-(e), 2512(1). The Stored Communications Act prohibits unauthorized "access" to "a facility through which an electronic communication service is provided." 18 U.S.C. § 2701(a). The claims alleged in the FAC arise from Amazon's alleged intrusion into Plaintiff's private Facebook groups. The alleged wrongs "exist independently" of Plaintiff's employment relationship with Amazon. *Howard*, 30 Cal. App. 5th at 670. The alleged wrongs do not arise out of or relate to the 2016 TOS, Plaintiff's participation in the Flex program, or Plaintiff's performance of services. The Court concludes that Plaintiff has met his burden to demonstrate that the claims alleged do not fall within the scope of the arbitration provision. The Motion to Compel Arbitration is denied.[4]

///

///

---

[4] The Court does not address whether the arbitration provision is unenforceable or unconscionable because the Court has concluded that the arbitration provision does not cover the claims alleged by Plaintiff.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VII.   CONCLUSION**

       IT IS HEREBY ORDERED that the Motion to Compel Arbitration, Dismiss, or, in the Alternative, to Stay filed by Defendant Amazon.com, Inc. (ECF No. 15) is denied.

Dated:  September 15, 2021

Hon. William Q. Hayes
United States District Court